THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
(WESTERN DIVISION)

| | |
|---|---|
| JOHN DUDENHOEFER, On Behalf of Himself And All Others Similarly Situated, | Civil Action No.: **1:08CV538** |
| Plaintiff, | **WEBER. J** |
| vs. | |
| FIFTH THIRD BANCORP, KEVIN T. KABAT, DARRYL F. ALLEN, JOHN F. BARRETT, ULYSSES L. BRIDGEMAN, JAMES P. HACKETT, GARY R. HEMINGER, ALLEN M. HILL, ROBERT L. KOCH II, DR. MITCHEL D. LIVINGSTON, HENDRIK G. MEIJER, JAMES E. ROGERS, GEORGE A. SCHAEFER, JR., JOHN J. SCHIFF, JR., DUDLEY S. TAFT, THOMAS W. TRAYLOR, PAUL L. REYNOLDS, THE PENSION AND PROFIT SHARING COMMITTEE, and JOHN DOES 1-20, | |
| Defendants. | |

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT
INCOME SECURITY ACT ("ERISA")

Plaintiff, a participant in the Fifth Third Bancorp Frozen Successor Plan and the Fifth Third Bancorp Master Profit Sharing Plan (collectively, the "Plan"), covering substantially all employees of Fifth Third Bancorp. and its subsidiaries (collectively "Fifth Third" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

**INTRODUCTION**

1.     This is a class action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plan's fiduciaries, including Fifth Third, on behalf of Participants in and beneficiaries of the Plan.

2. Throughout the Class Period (October 19, 2007 through the present), the Plan invested in Fifth Third common stock ("Fifth Third Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Participant Contribution Component of the Plan.

3. Plaintiff's claims arise from the failure of Defendants, who are Plan fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period, as is required by ERISA.

4. Specifically, Plaintiff alleges in Count I that Defendants breached their fiduciary duties to Plaintiff in violation of ERISA by failing to prudently and loyally manage the Plan's investment in Fifth Third Stock by continuing to offer Company Stock as an investment option instead of suitable short-term options within the Plan, when the stock no longer was a prudent investment for Participants' retirement savings. In Count II, Plaintiff alleges that Defendants who communicated with Participants regarding the Plan's assets, or had a duty to do so, failed to provide Participants with complete and accurate information regarding Fifth Third Stock sufficient to advise Participants of the true risks of investing their retirement savings in Company Stock. In Count III, Plaintiff alleges that Defendants, responsible for the selection, removal, and, thus, monitoring of the Plan's fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate. In Count IV, Plaintiff alleges that Defendants breached their duties and responsibilities to avoid conflicts of interest and serve the interests of the Participants in and beneficiaries of the Plan with undivided loyalty. In Count V, Plaintiff alleges that Defendants breached their duties and responsibilities as co-fiduciaries in the manner and to the extent set forth in the Count. Finally,

- 2 -

in Count VI, Plaintiff states a claim against Fifth Third for knowing participation in the fiduciary breaches alleged herein.

5.     This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2). In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

6.     As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plan has suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan's Participants. Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

7.     Because Plaintiff's claims apply to Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this as a class action on behalf of all Participants and beneficiaries of the Plan during the Class Period. Plaintiff also brings this action as a participant seeking Plan-wide relief for breach of fiduciary duty on behalf of the Plan.

8.     In addition, because the information and documents on which Plaintiff's claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief. At such time as Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## JURISDICTION AND VENUE

9. ***Subject Matter Jurisdiction.*** This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l). In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

10. ***Personal Jurisdiction.*** ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them. This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in the District of Ohio

11. ***Venue.*** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiff

12. ***Plaintiff John Dudenhoefer*** is a resident of Collier County, Florida. At all relevant times, Plaintiff was a Fifth Third employee and a participant in the Plan.

### Defendants

13. ***Defendant Fifth Third*** is incorporated under the laws of Ohio and is headquartered at 38 Fountain Square Plaza, Cincinnati, Ohio 45263.

- 4 -

14.     Throughout the Class Period, Fifth Third's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

15.     **_Defendant Kevin T. Kabat ("Kabat")_** was, at relevant times, the Company's Chief Executive Officer ("CEO"), President and director of the Company.  During the Class Period, defendant Kabat was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

16.     **_Defendant Darryl F. Allen ("Allen")_** was, at relevant times, a director of the Company.  During the Class Period, defendant Allen was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

17.     **_Defendant John F. Barrett ("Barrett")_** was, at relevant times, a director of the Company.  During the Class Period, defendant Barrett was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the

- 5 -

appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

18.     *Defendant Ulysses L. Bridgeman ("Bridgeman")* was, at relevant times, a director of the Company.  During the Class Period, defendant Bridgeman was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

19.     *Defendant James P. Hackett ("Hackett")* was, at relevant times, a director of the Company.  During the Class Period, defendant Hackett was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

20.     *Defendant Gary R. Heminger ("Heminger")* was, at relevant times, a director of the Company.  During the Class Period, defendant Heminger was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

21.     *Defendant Allen M. Hill ("Hill")* was, at relevant times, a director of the

Company. During the Class Period, defendant Hill was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

22. **_Defendant Robert L. Koch II ("Koch")_** was, at relevant times, a director of the Company. During the Class Period, defendant Koch was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

23. **_Defendant Dr. Mitchel D. Livingston ("Livingston")_** was, at relevant times, a director of the Company. During the Class Period, defendant Livingston was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

24. **_Defendant Hendrik G. Meijer ("Meijer")_** was, at relevant times, a director of the Company. During the Class Period, defendant Meijer was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he

exercised authority or control with respect to the management of the Plan's assets.

25.     *Defendant James E. Rogers ("Rogers")* was, at relevant times, a director of the Company. During the Class Period, defendant Rogers was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

26.     *Defendant George A. Schaefer, Jr. ("Schaeffer")* was, at relevant times, a director of the Company. During the Class Period, defendant Schaeffer was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

27.     *Defendant John J. Schiff, Jr. ("Schiff")* was, at relevant times, a director of the Company. During the Class Period, defendant Schiff was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

28.     *Defendant Dudley S. Taft ("Taft")* was, at relevant times, a director of the Company. During the Class Period, defendant Taft was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the

appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

29.    **Defendant Thomas W. Traylor ("Traylor")** was, at relevant times, a director of the Company.  During the Class Period, defendant Traylor was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

30.    **Defendant Paul L. Reynolds ("Reynolds")** was, at relevant times, a member of the Pension and Profit Sharing Committee.  During the Class Period, defendant Reynolds was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

31.    **Defendant Pension and Profit Sharing Committee (the "Committee")**. Defendant Reynolds is a member of the Committee and is responsible for overseeing the Plan. As a member of the Committee, he is responsible for appointing representatives to the Committee.

32.    **Defendants John Does 1-20 ("John Does 1-20")** are residents of the United States and are or were fiduciaries of the Plan during the Class Period.  These defendants whose identities are currently unknown to Plaintiff, may include additional Fifth Third employees.

- 9 -

Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated (the "Class"):

> All persons who were Participants in or beneficiaries of the Plan at any time between October 19, 2007 through the present (the "Class Period) and whose accounts held Company stock or units in the Fifth Third Stock.

34.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants each owed a fiduciary duty to Plaintiff and members of the Class;

(b)     whether Defendants breached their fiduciary duties to Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's Participants and beneficiaries; and

(c)     whether Defendants violated ERISA.

36.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained a diminution of vested benefits arising out of the Defendants' wrongful conduct in violation of federal law as complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, ERISA, and complex civil and commercial litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members or the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical manner, be dispositive of the interests of the other members of the Class parties to the actions, or substantially impair or impede their ability to protect their interests.

39.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecuting separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## THE PLAN

40.     The Plan is an "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

41.     The Plan is a legal entity that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

42.     In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a

defendant. Rather, Plaintiff requests relief for the benefit of the Plan and for the benefit of its Participants.

43. The Plan is a "defined contribution plan" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

44. The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

**Plan Fiduciaries**

45. *Named Fiduciaries*. ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A). The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

46. *De Facto Fiduciaries*. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority

- 12 -

or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

47.     Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing Plan documents, through their conduct, and under ERISA.

48.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan -- and the Plan's investments -- solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

49.     Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

## FIFTH THIRD STOCK WAS AN
## IMPRUDENT INVESTMENT FOR THE PLAN

50.     Plaintiff alleges that, during the Class Period, Defendants were negligent in not knowing that: (a) the Company's operating expenses were rapidly increasing; (b) the Company was undergoing higher loan losses due to its weakening credit quality; (c) that the Company was

in need of a cash infusion to offset the undisclosed negative trends in loan losses; (e) the Company's Non-Performing Assets were dangerously increasing; and (f) Company's Tier-1 capital base had declined precipitously and required a major infusion of capital.

51.     On October 19, 2007, the Company announced in its Form 8-K its quarterly results and that revenue growth was "impressive."    The Form 8-K was a fiduciary communication as it was incorporated into Plan documents through the Company's Summary Plan Description ("SPD"). In the Company's Form 8-K, defendant Kabat stated:

> Third quarter results were solid in a quarter that saw significant market disruption. While we weren't completely immune from that disruption, we were spared most of its effects. . . . Revenue growth of two percent sequentially and seven percent from a year ago was impressive, given the market, with strength in both net interest income and fee income. Expenses were also well controlled during the quarter. Credit continues to be a challenge and we are actively managing our risks as the cycle progresses. We continue to expect further deterioration in credit trends for the near future but the deterioration to remain manageable. Overall, we were pleased with our results given the macro environment in this kind of quarter and continue to execute our strategic plans.

52.     On that same date, the Company held a conference call to discuss its Third Quarter 2007 results.   During the conference call, defendant Kabat stated in relevant part:

> *I would like to start off by saying that this was a solid quarter for us and we're pleased with the results,* particularly given the macro environment that we're operating in.  We showed strong revenue growth and expenses were well controlled. Fee growth was outstanding, and NII growth was also quite good, and we hope will continue to benefit from wider, more rational spreads. We do expect some further deterioration of credit as we manage our way through the cycle.

(Emphasis added).

53.     In the Company's January 22, 2008 Form 8-K, the Company reported its earnings for the year 2007.   The Form 8-K was a fiduciary communication as it was incorporated into Plan documents through the Company's SPD. The Company's Form 8-K stated in relevant part:

> Fifth Third Bancorp today reported 2007 earnings of $1.1 billion, or $2.03 per diluted share, compared with $1.2 billion, or $2.13 per diluted share in 2006. Reported fourth quarter 2007 earnings were

$38 million, or $0.07 per diluted share, compared with $325 million, or $0.61 per diluted share in the third quarter of 2007 and $66 million, or $0.12 per diluted share, for the same period in 2006. Reported results included a non-cash estimated charge of $155 million, both pre-tax and after-tax, or $0.29 per share, to lower the current cash surrender value of one of our Bank-Owned Life Insurance ("BOLI") policies. Additionally, quarterly results included a non-cash charge of $94 million pre-tax, or $0.12 per share after-tax, related to Visa members' indemnification of estimated future litigation settlements, as well as $8 million pre-tax, or $0.01 per share after-tax, in acquisition-related costs primarily associated with the acquisition of R-G Crown, which closed in early November.

54.     In the Company's Form 8-K, although defendant Kabat noted some weakness in

the credit markets, he continued to portray the Company's positions as "strong." Defendant

Kabat stated in relevant part:

> "Obviously, this has been a difficult quarter for the banking industry," said Kevin T. Kabat, President and CEO of Fifth Third Bancorp. "Like others, we saw a fairly marked turn in credit performance during the quarter. And, while we have not had any significant market-related losses on structured securities, loans, or funds we manage for others, one of our BOLI insurance policies was invested in assets that experienced significant market declines due to widening credit spreads, which negatively impacted our reported results. *Operating results continue to be relatively strong, in terms of loan and core deposit growth, net interest income growth, and noninterest income growth.* However, the credit environment remains challenging, and we expect credit conditions and the performance of our loan portfolio to continue to deteriorate in the near term. This led to an increase in our loan loss reserves in the fourth quarter and, given current trends, we would expect that to continue in the near-term. We have been actively working over the past year to take steps to address areas of concern. These areas include home equity loans and, more generally, real estate loans, particularly in the upper Midwest and Florida.
>
> As a lending institution, we know we will experience credit cycles and we expect them. It is our responsibility to ensure that we are prepared for them and that we have the balance sheet strength and earnings power to manage through them. *Fortunately, Fifth Third is well-positioned on both counts, and we intend to continue to focus on executing on our strategic plans and capitalizing on opportunities presented by this environment.*"

(Emphasis added).

55.     In the Company's April 22, 2008 Form 8-K, the Company continued to tout the "growth" of its Company. The Form 8-K was a fiduciary communication as it was incorporated into Plan documents through the Company's SPD. Defendant Kabat stated in relevant part:

> ***"This quarter we produced excellent loan and deposit growth that drove impressive performance in net interest income and continued strong fee growth from our businesses,"*** said Kevin T. Kabat, President and CEO of Fifth Third Bancorp. "However, strong operating performance continues to be offset by higher credit costs, primarily reflecting further deterioration of residential real estate, homebuilder and residential development loans. Nonperforming asset growth and higher loan losses reflect a weaker economic environment and continue to be disproportionately experienced in Florida and Michigan. Based on these developments, we significantly increased our allowance for loan and lease losses during the quarter.
>
> We remain very active in taking steps to address the issues we and the industry are facing, and to work with borrowers to address difficulties they are experiencing. We expect credit conditions to continue to deteriorate in the near term, and to experience higher nonperforming assets and credit losses during this period.
>
> Although every credit cycle differs, we expect them to occur. We take seriously our responsibility to provide credit to our customers, to lend prudently, and to maintain the capital necessary to manage through these cycles. This is an unusually difficult cycle, but we believe Fifth Third is well-positioned relative to many of its peers. ***We expect to continue to post strong operating results, to execute on our strategic plans, and to capitalize on the opportunities that are created by an environment such as this***."

(Emphasis added).

56.     The above statements were false and misleading because Defendants misrepresented or failed to disclose that: (a) First Third operating expenses were rapidly increasing; (b) the Company was undergoing higher loan losses due to its weakening credit quality; (c) that the Company was in need of a cash infusion to offset the undisclosed negative trends in loan losses; (e) the Company's Non-Performing Assets were dangerously increasing; and (f) Company's Tier 1 capital base had declined precipitously and required a major infusion of capital.

- 16 -

57.     As a result of Defendants' false and misleading Class Period statements and omissions, the Company's common stock traded at inflated levels during the Class Period.

58.     On June 18, 2007, the Company revealed its true financial condition and announced plans to raise $2 billion in capital and slash its dividend 66% due to mounting credit losses.  On this news, the Company's shares plunged 27% to close at $9.26 per share after heavy trading.

### THE TRUTH BEGINS TO EMERGE

59.     On June 18, 2007, the Company filed a Form 8-K with the SEC.  The Company revealed the Company's true financial condition and announced its plans to raise $2 billion in capital and slash its dividend 66% due to mounting credit losses.  The Company stated that it would slash dividends and try to raise $2 billion with a stock offering and sale of non-core businesses.

60.     The Company predicted second-quarter earnings would fall far below Wall Street expectations and cited the U.S. housing and credit crisis that had battered the financial sector, particularly in Ohio, Michigan and Florida.

61.     Fifth Third stated that it planned a $1 billion offering of convertible preferred shares and also planned to raise $1 billion by selling unspecified operations, expecting such sales to be completed over the next several quarters.  In addition, the Company was cutting its quarterly dividend by nearly two-thirds to 15 cents from 44 cents.

62.     The Company further stated that second-quarter earnings were expected to be I to 5 cents a share.  Analysts surveyed by Thomson Financial were expecting 40 cents a share. In response, Standard & Poor's Equity Research bank analyst, Erik Oja, cited concerns about

declining credit quality and downgraded the Company shares to "sell" from a hold recommendation.

63.     On this news, Fifth Third shares plunged 27% to close at $9.26 per share after heavy trading.

### THE LAW UNDER ERISA

64.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

65.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

66.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

67.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

(a)     The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in Fifth Third Stock, to ensure that each investment is a suitable option for the Plan;

(b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)     A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

68.     ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

69.     Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

## DEFENDANTS' FIDUCIARY STATUS

70.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

71.     During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

72.     During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants via the Company's website and Plan-related documents which incorporated and/or reiterated these statements. Defendants also acted as fiduciaries to the extent of this activity.

73.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable. To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

### COUNT I

74.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

75.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

76.    As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

77.    Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in Fifth Third Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan. Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

78.    A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

79.     Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in Fifth Third Stock.

80.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

81.     Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

82.     Specifically, at least some of the Defendants had actual knowledge of Fifth Third's corporate malfeasance and questionable reporting and business. In addition, in light of their high-ranking positions as high ranking officers at the Company, Defendants had/should have had constructive knowledge of these activities.

83.     Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of Fifth Third Stock were not being prudently managed. They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in Fifth Third Stock, despite inarguably having knowledge of such breaches.

- 22 -

84.     Furthermore, through their own failure to prudently and loyally manage the Plan's investment in Fifth Third Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in Fifth Third Stock.

85.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement. Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

86.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

87.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

88.     As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating Plan documents and information to Participants regarding the Plan and assets of the Plan.  In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

89.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries

- 23 -

of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options such that Participants can make informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in Fifth Third Stock.

90.    Defendant Fifth Third, through its officers and directors issued a multitude of false and misleading statements through SEC filings and press releases regarding value of Fifth Third Stock and the financial health of the Company.

91.    Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by Fifth Third, through its officers. In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in Fifth Third Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding Fifth Third Stock as required by ERISA.

92.    In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication. Defendants, however, failed to disclose any information to Plan Participants regarding Fifth Third's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan. Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

- 24 -

93.     Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding Fifth Third Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying inaccurate information regarding the soundness of Fifth Third Stock and the prudence of investing retirement contributions in the Company's stock.

94.     These failures were particularly devastating to the Plan and the Participants, as a certain percentage of the Plan's assets were invested in Fifth Third Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

95.     In addition, Fifth Third and the other defendants knew or should have known that information they possessed regarding the true condition of Fifth Third would have an extreme impact on the Plan. Yet, in violation of their fiduciary duties, these Defendants failed to provide Participants with this crucial information.

96.     As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Fifth Third Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, Fifth Third Stock was an inherently unsuitable and inappropriate investment option for their Plan accounts.   Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

- 25 -

97.     As a consequence of Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses. If Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

98.     Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

99.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

100.    At all relevant times, as alleged above, Fifth Third and defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). At all relevant times, as alleged above, the scope of the fiduciary responsibilities of Fifth Third and defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries. The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries.

101.    The monitoring fiduciaries, Fifth Third and defendants had the duty to:

(a)     Ensure that the appointed Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

(b)     Ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

- 26 -

(c)     Ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

(d)     Ensure that the appointed Plan fiduciaries have ready access to outside, impartial advisors when needed;

(e)     Ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)     Ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

102.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.    In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

103.    Fifth Third and defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an

- 27 -

undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

104.    Fifth Third and defendants also breached this duty by not properly disclosing information, that they knew or should have known, about the Company's improper business practices to the Trustee.  The Trustee is responsible for investing and managing assets of the Plan.  However, in doing so, the Trustee shall be subject to the direction and guidance of Fifth Third.

105.    Fifth Third and the other defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering Fifth Third Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in Fifth Third Stock when it no longer was prudent to do so. Despite this knowledge, Fifth Third and defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

106.    Fifth Third and defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

107.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

108.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

109.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

110.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

111.    ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

112.    Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries. These conflicts of interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and Fifth Third stockholders), and the interests of the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

113.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in Fifth Third Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made Fifth

Third Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

114.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

### COUNT V

115.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

116.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

117.    As alleged herein, Fifth Third, through its officers and employees withheld material information from the Plan's Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these defendants as a matter of law. In addition, as alleged herein on information and belief, Fifth Third and the other defendants participated in and/or knew about the Company's

misrepresentations regarding the Company's financial condition. Thus, these defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of Fifth Third Stock as an investment for the Participants' retirement assets.

118. Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of Fifth Third Stock during the Class Period. They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in Fifth Third Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A). In addition, these same defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in Fifth Third Stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

119. In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole. Instead, they compounded the problem by downplaying the significance of Fifth Third's problems and further concealing such practices from Participants and the market as a whole.

120. In addition, Defendants enabled the imprudent asset management decisions of any and all other defendant -- including any appointed Plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan

caused by the Company's improper practices, so that these other defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in Fifth Third Stock. In so doing, Defendants breached ERISA § 405(a)(l)(B).

121.  Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed Plan fiduciaries' imprudent management of the Fifth Third Stock in the Plan.

122.  As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

123.  Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

124.  Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

125.  To the extent that Fifth Third is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, Fifth Third knowingly participated in the breaches of those defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

126.  Fifth Third benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing Fifth Third Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein

and as a result of Fifth Third providing the market with materially misleading statements and omissions. Accordingly, Fifth Third may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of Fifth Third Stock which would have been contributed to the Plan, but for Fifth Third's participation in the foregoing breaches of fiduciary duty.

## CAUSATION

127.    Upon information and belief, the Plan suffered millions of dollars in losses in Plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in Fifth Third Stock during the Class Period, in breach of Defendants' fiduciary duties. These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

128.    Defendants are responsible for losses in Plan benefits caused by the Participants' direction of investment in Fifth Third Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Defendants concealed material, non-public facts from Participants, and provided inaccurate, incomplete and materially misleading information to them regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle. As a consequence, Participants could not exercise independent control over their investments in Fifth Third Stock, and Defendants remain liable under ERISA for losses caused by such investment.

129.    Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in

Fifth Third Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plan from its holdings of Fifth Third Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

130. Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to their detriment on the misstatements and omissions that Defendants made to Plan Participants.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

131. Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in Fifth Third Stock during the Class Period. As a consequence of Defendants' breaches, the Plan suffered significant losses.

132. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary... who breaches any of the ... duties imposed upon fiduciaries .. . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes Asuch other equitable or remedial relief as the court may deem appropriate . . . ."

133. With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the Plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable

- 34 -

alternative investment available. In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

134.    Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

135.    Under ERISA, each defendant is jointly and severally liable for the losses suffered by the Plan in this case.

## ERISA SECTION 404(c) DEFENSE INAPPLICABLE

136.    ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions. In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

137.    Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite. As a consequence,

Participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in Fifth Third Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

138.    Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in Fifth Third Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

139.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.   Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the Plan suffers a loss.  Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

140.    Finally, Defendants remain liable for Plan losses that pertain to Fifth Third Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.    A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

- 36 -

C. An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

D. Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E. An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F. An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in Fifth Third Stock;

G. Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

H. An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I. An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J. An Order for equitable restitution and other appropriate equitable monetary relief against Defendants.

Dated:  August 12, 2008

**PARRY DEERING FUTSCHER & SPARKS, PSC**

By: _____

Ronald R. Parry
411 Garrard Street
P.O. Box 2618
Covington, Kentucky  41012-2618
Telephone:  (859) 291-9000
Facsimile:  (859) 291-9300
E-mail:  rparry@pdfslaw.com

**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, New York 10017
Telephone: (212) 983-1300
Facsimile:  (212) 983-0383
E-mail: timlaw2001@yahoo.com

tjmckenna@gaineyandmckenna.com

*Attorneys for Plaintiff*