IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

John Dudenhoeffer,               )
                                 )
              Plaintiff,         )   Case No. 1:08-CV-538
                                 )
      vs.                        )
                                 )
Fifth Third Bancorp, <u>et al.</u>,   )
                                 )
              Defendants.        )

O R D E R

        This matter is before the Court on Defendant Fifth

Third Bancorp, <u>et al.</u>'s motion to dismiss the amended

consolidated class action complaint (Doc. No. 56).  For the

reasons that follow, Defendants' motion to dismiss is well-taken

and is **GRANTED.**

I. <u>Background</u>

        Plaintiffs John Dudenhoeffer and Alireza Partovipanah,

both former employees of Fifth Third Bancorp, filed suit against

Defendant Fifth Third Bancorp and several individual Defendants[1]

on behalf on themselves and a class of similarly-situated

individuals for alleged violations of the Employee Retirement

Income Security Act, 29 U.S.C. § 1001, <u>et seq.</u>  Plaintiffs are

---

        [1]    The individual Defendants are Kevin T. Kabat, Fifth
Third's Chief Executive Officer and President, the members of
Fifth Third's Pension, Profit Sharing and Medical Plan Committee,
Paul L. Reynolds, Nancy Phillips, Greg Carmichael, Robert
Sullivan, Mary Tuuk, and other John Doe Defendants.

participants in the Fifth Third Bancorp Master Profit Sharing Plan ("the Plan") and invested in Fifth Third common stock through the Plan during the class period.

The complaint has four counts.  Count I generally alleges that Defendants breached their fiduciary duty to Plaintiffs and the class, in violation of 29 U.S.C. § 1109, by maintaining Fifth Third stock as an investment option after it become imprudent to do so.  Count I also alleges that Defendants breached their fiduciary duty by failing to provide complete and accurate information to the plan participants about Fifth Third's financial condition and the prudence of investing in Fifth Third stock.  Finally, Count I alleges that Defendants breached their fiduciary duty to plan participants by maintaining its pre-existing investment in Fifth Third stock, i.e., not divesting the Plan of Fifth Third stock, after it became an imprudent investment for the Plan.

Count II alleges that some of the individual Defendants breached their fiduciary duties to the plan participants by failing to monitor the performance of persons charged with managing the Plan's assets despite their knowledge that investing in Fifth Third stock was an imprudent option.

Count III alleges that some of the individual Defendants violated ERISA by failing to avoid or ameliorate conflicts of interest, which in turn allegedly compromised their

2

ability to act in the best interests of the plan participants.

Count IV alleges that Defendants breached their fiduciary duties to the plan participants by failing to correct known breaches of fiduciary duties, by participating in breaches of fiduciary duty, or enabling breaches of fiduciary duty, in violation of 29 U.S.C. § 1105.

The complaint sets out in detail the nature and operation of the Plan. Consolidated Class Action Complaint (Doc. No. 54) ¶¶ 37-51. Generally, however, the Plan is a defined contribution profit sharing plan with a 401(k) feature. Plan participants can make contributions to the Plan and can direct the Plan to make investments in any one of 20 separate investment funds, including one fund that invests entirely in Fifth Third common stock, except for short-term liquid assets to accommodate the liquidity needs of the fund. Fifth Third also matches up to 4% of each employee's pre-tax contributions. The matching contributions are invested initially in the Fifth Third Stock Fund, but participants have the right to move these contributions to other funds. Although the parties dispute this point, as the Court explains infra, at 6-10, the Fifth Third Stock Fund of the Plan is an employee stock ownership fund ("ESOP") under ERISA.

The complaint contains 281 paragraphs and is 78 pages long. The alleged breaches of fiduciary duty generally arise, however, out of the same fact pattern set forth in Eshe Fund v.

3

<u>Fifth Third Bancorp</u>, Case No. 1:08-CV-421 (S.D. Ohio) (Beckwith, S.J.), a securities fraud class action that has been consolidated with this one for purposes of discovery.  For present purposes, it is sufficient to note that the complaint alleges that during the class period, Fifth Third switched from being a conservative lender to a subprime lender.  As a result, Fifth Third's loan portfolio became increasingly at risk due to defaults.  The complaint alleges that this change in lending philosophy and/or mismanagement of the company made investing in Fifth Third common stock too risky for a retirement plan, that Defendants knew or should have known that Fifth Third stock was too risky, that they should have stopped further investment of Plan assets in Fifth Third stock, and that they should have divested the Plan of Fifth Third stock.  The complaint alleges that the price of Fifth Third stock declined 74% from the beginning of the class period, July 19, 2007, through September 18, 2009.  Complaint ¶ 50.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This motion has been fully briefed and is now ready for disposition.

## II. <u>Rule 12(b)(6) Standard of Review</u>

A motion to dismiss for failure to state a claim operates to test the sufficiency of the complaint.  The trial court must construe the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded factual

4

allegations.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),
and Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155
(6th Cir. 1983).  The court need not accept as true legal
conclusions or unwarranted factual inferences.  Lewis v. ACB
Business Servs., Inc., 135 F.3d 389, 405 (6th Cir. 1998).

        The complaint, however, must contain more than labels,
conclusions, and formulaic recitations of the elements of the
claim.  Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291,
295 (6th Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 555 (2007)).  The factual allegations of the complaint
must be sufficient to raise the right to relief above the
speculative level.  Id.  Nevertheless, the complaint is still
only required to contain a short, plain statement of the claim
indicating that the pleader is entitled to relief.  Id. (citing
Erickson v. Pardus, 551 U.S. 89, 93 (2007)).  Specific facts are
not necessary and the pleader is only required to give fair
notice of the claim and the grounds upon which it rests.  Id.  To
withstand a motion to dismiss, "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.
Ct. 1937, 1949 (2009)(internal quotation marks omitted).  Mere
conclusions, however, are not entitled to the assumption of
truth.  Id. at 1950.  A claim is facially plausible if it
contains content which allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. Id. at 1949. Plausibility is not the same as probability, but the complaint must plead more than a possibility that the defendant has acted unlawfully. Id. If the complaint pleads conduct which is only consistent with the defendant's liability, it fails to state a plausible claim for relief. Id.

### III. Analysis

Defendants' motion to dismiss starts with the premise that the Fifth Third Stock Fund is an ESOP. Because this fund is an ESOP, Defendants argue, they are entitled to a presumption that their decision to maintain the investment in, and decision not to divest the fund of, Fifth Third common stock is entitled to deference. Moreover, Defendants argue, the complaint fails to allege facts which overcome the presumption that investment in Fifth Third stock was reasonable. Thus, Defendants continue, the breach of fiduciary duty claims alleged in Count I fail as a matter of law. Additionally, Defendants argue, because the remaining breach of fiduciary duty claims are derivative of or dependent on Count I, they fail as well. The Court agrees.

### B. Breach of Fiduciary Duty Concerning Retaining Fifth Third Stock as an Investment Option for the Plan

#### 1. The Fifth Third Stock Fund is an ESOP

The first issue that needs to be resolved is whether the Fifth Third Stock Fund is an ESOP. Fifth Third initially argues that Plaintiffs are not entitled to litigate this issue

because then-Magistrate Judge Black determined in an earlier
case, <u>Shirk v. Fifth Third Bancorp</u>, No. 05-CV-049, 2009 WL
692124, at *11 (S.D. Ohio Jan. 29, 2009), that the Fifth Third
Stock Fund is an ESOP.  Plaintiffs argue that Judge Black's
decision is not res judicata on this issue because they were not
parties in <u>Shirk</u>.  The Court need not, however, resolve the
collateral estoppel issue because the Fifth Third Stock Fund
plainly is an ESOP.

An ESOP is "a stock bonus plan which is qualified, or a
stock bonus plan and money purchase plan both of which are
qualified, under section 401 of Title 26, and which is designed
to invest primarily in qualifying employer securities[.]" 29
U.S.C. § 1107(d)(6)(A).  The Sixth Circuit apparently has not
addressed whether the ESOP determination is a question of law
that can be decided at the pleading stage by reviewing the plan
documents or whether it is a question of fact to be decided
sometime after fact discovery is completed.  District courts in
the Sixth Circuit have reached opposition conclusions.  <u>See In re</u>
<u>Ford Motor Co. ERISA Litigation</u>, 590 F. Supp.2d 883, 903
(E.D.Mich. 2008) (question of law for trial court); <u>In re General</u>
<u>Motors ERISA Lit.</u>, No. 05-71085, 2006 WL 897444 at *7 (E.D.Mich.
Apr. 6, 2006) (same);  <u>In re Diebold Erisa Lit.</u>, No. 5:06-CV-
0170, 2008 WL 2225712, at *8 (N.D. Ohio May 28, 2008) (fact
questions preclude determination of plan's ESOP status at

7

pleading stage); <u>Shirk v. Fifth Third Bancorp</u>, No. 05-cv-49, 2007 WL 1100429, at *9 (S.D. Ohio Apr. 10, 2007) (Black, M.J.) (same).[2]  Generally, however, interpretation of an ERISA plan is made by simply reviewing the language of the plan.  <u>Kolkowski v. Goodrich Corp.</u>, 448 F.3d 843, 850 (6th Cir. 2006).  Resort to extrinsic evidence to aid in interpretation is permissible only when the terms of the plan are ambiguous.  <u>Id.</u>  Thus, in this case, unless review of the pertinent plan provisions reveals some ambiguity, this Court sides with those decisions that have concluded that whether the plan is an ESOP can be determined at the motion to dismiss stage by reviewing the plan documents.

As indicated, in order to qualify as an ESOP, the plan must "invest primarily in qualifying employer securities" and meet such other requirements as are prescribed by 26 U.S.C. § 401.  <u>See</u>, <u>supra</u>.  Here, Section 7.4 of the Plan designates the "Fifth Third Stock Fund" as an investment option and states that the "fund shall be primarily invested in shares of common stock of Fifth Third Bank."  Fifth Third Bancorp Master Profit Sharing Plan § 7.4(a) (Doc. No. 54-5, at 39).  And, indeed, the ESOP Annual Information Schedule filed with Fifth Third's IRS Form

---

[2]      Interestingly, however, although then-Magistrate Judge Black determined in this order that whether the plan is an ESOP cannot not be determined at the motion to dismiss stage, at the summary judgment stage he determined that the plan was an ESOP almost solely by reference to the plan documents.  <u>See</u> <u>Shirk</u>, 2009 WL 692124, at *11.

5500 indicates that the fund invests only in Fifth Third common stock. Doc. No. 56-6, at 11-13. The other principal requirement is that the plan document must formally designate the plan as an ESOP. 29 C.F.R. § 2550.407d-6(a)(2). The Plan also meets this requirement because Section 1.2 states that the Fifth Third Stock Fund "shall constitute a stock bonus plan and an employee stock ownership plan as defined in section 4975(e)(7) of the Code, designed to invest primarily in qualifying employer securities." Doc. No. 56-2, at 3. Thus, the Fifth Third stock fund unambiguously is an ESOP.

Plaintiffs argue, however, that this fund is not an ESOP because overall Section 3.3(a) of the Plan allows the plan administrator to discontinue or change investment options when it becomes prudent to do so. Additionally, Plaintiffs point out that § 7.4 of the Plan actually allows investment in short-term liquid assets. Neither of these arguments alter the conclusion that the Fifth Third Stock Fund is an ESOP. Regarding the latter argument, the authority to invest in short-term liquid assets clearly is simply a provision to allow the plan administrator to have cash or cash-equivalents in hand to pay out anticipated distributions. There is no indication that the Plan intended short-term liquid assets to be an alternative investment option for this fund. The former provision cited by Plaintiffs does nothing more than recognize that the plan administrators have an

ongoing duty to monitor the performance of the investment funds selected for the Plan.  This section, however, does not affect the characterization of the stock fund as an ESOP because the principal inquiry is not whether the plan administrators have authority to discontinue the fund, but rather whether it "invest[s] primarily in qualifying employer securities."  As just stated, the record indicates that the Fifth Third Stock Fund is intended to and does invest primarily in Fifth Third common stock.

Accordingly, the Court concludes that the Fifth Third stock fund is an ESOP.

### 2. <u>ESOPs and Breach of Fiduciary Duty Claims</u>

The determination that the Fifth Third Stock Fund is an ESOP is an important one because it affects the consideration of whether the plan administrators fulfilled their fiduciary duties to the plan participants.

The case ultimately controlling the disposition of Defendants' motion to dismiss on this issue is <u>Kuper v. Iovenko</u>, 66 F.3d 1447 (6th Cir. 1995).  <u>Kuper</u> discussed in some detail an appropriate way to reconcile the statutory exemption of ESOPS from ERISA's diversification requirements from ERISA's overall requirement that fiduciaries must act in the best interests of plan participants at all times and properly manage employee benefit plans.  <u>Id.</u> at 1457-59.  The Court need not recapitulate

10

all of that analysis here.  It is sufficient for present purposes
to state that the Kuper Court held that if the plan is an ESOP,
the plan fiduciaries start with a presumption that their
"decision to remain invested in employer securities was
reasonable."  Id. at 1459.  In other words, the plan
administrator's decision to remain invested in employer
securities presumptively is not a breach of fiduciary duty.  The
plaintiff may overcome "this presumption of reasonableness by
showing that a prudent fiduciary acting under similar
circumstances would have made a different investment decision."
Id.  Thus, in this case, Defendants start with a presumption that
their decision to remain invested in Fifth Third stock was
reasonable.  Consequently, in order to state a claim for breach
of fiduciary duty, Plaintiffs must plead facts sufficient to
overcome the presumption of reasonableness.

        Plaintiffs argue that it is inappropriate to apply the
Kuper presumption at the motion to dismiss stage and cite various
district court cases to that effect.  This question also presents
another split of authority among district courts.  Cf. In re The
Goodyear Tire & Rubber Co. ERISA Lit., 438 F.Supp.2d 783, 793
(N.D. Ohio 2006) (identifying split).  In light of Twombly and
Iqbal, however, if the plan at issue is an ESOP, as in this case,
there really is no choice but to apply the Kuper presumption at
the pleading stage.  As stated above, Twombly and Iqbal require

the complaint to state a claim that is plausible on its face.  If
an ESOP plan fiduciary starts with a presumption that the
decision to remain invested in plan securities was reasonable,
then a claim for breach of fiduciary duty only becomes plausible
if there are sufficient facts alleged to conclude that "a prudent
fiduciary acting under similar circumstances would have made a
different investment decision."  A number of courts have reached
the same conclusion for more or less the same reason.  <u>See</u> <u>In re
Citigroup Erisa Lit.</u>, No. 07 Civ. 9790, 2009 WL 2762708, at *16
(S.D.N.Y. Aug. 31, 2009) (collecting cases); <u>see</u> <u>also</u> <u>Morrison v.
MoneyGram Int'l, Inc.</u>, 607 F. Supp.2d 1033, 1052 (D.Minn.
2009)("To say that the presumption of prudence 'applies' at the
pleading stage is just another way of saying that plaintiffs must
allege sufficient facts to demonstrate that they have a
non-speculative claim that the fiduciary abused its discretion
(or otherwise acted in a manner that would overcome the [<u>Kuper</u>]
presumption).").  Accordingly, the Court concludes that the <u>Kuper</u>
presumption of prudence may be applied at the pleading stage.

> 3. <u>The Complaint Fails to Allege Facts Which
> Overcome the Presumption of Reasonableness</u>

The next question that arises is what kind of facts
must the plaintiff allege to overcome the presumption of
reasonableness.  In <u>Kuper</u>, the Court held that the following
facts were insufficient to overcome the presumption of
reasonableness: 1) defendants admitted that they did not consider

diversifying or liquidating the ESOP despite their knowledge of the company's financial difficulties; 2) the company's CEO had sold all of his shares of company stock; and 3) the company should have considered diversifying or liquidating the ESOP when transfer of their ESOP shares to the purchaser of their particular division was delayed (plaintiffs claimed at the point of sale of their division, they no longer had the same interest in the company that they had while employees of the company). 66 F.3d at 1459. With respect to the plaintiffs' first contention, the Court held that in order for a fiduciary to be liable for failure to investigate other investment options, the plaintiff must also show that a reasonable investigation would have shown that the investment at issue was imprudent. Id. at 1459-60. In that particular case, which was decided on summary judgment, the Court held that plaintiffs had failed to show that holding onto the company stock was imprudent because defendants had shown that the price of the stock fluctuated during the class period and several investment advisors recommended holding it. Id.

Kuper appears to be the only Sixth Circuit decision which discusses whether the plaintiffs have adduced sufficient facts to overcome the presumption of reasonableness. The other Circuit Courts have not laid down a general rule of applicability either. They do, however, tend to use the facts in Moench v. Robertson, 62 F.3d 553 (3rd Cir. 1995), the case which first

13

articulated the reasonableness presumption adopted in <u>Kuper</u>, as a baseline for comparison.  In <u>Moench</u>, where the Court remanded the case for further development of the record in light of its new presumption of reasonableness standard, the plaintiffs had adduced facts showing that the company stock had declined from $18.25 to less than $.25 per share in a two-year period, federal regulators had warned the company directors that the company was on the verge of collapse, there were various regulatory violations, the FDIC eventually took over the company, and the company ultimately filed for bankruptcy under Chapter 11.  <u>See id.</u> at 557.

Thus, in <u>Edgar v. Avaya, Inc.</u>, 503 F.3d 340 (3rd Cir. 2007), while the Court pointed out that it had never held that the company had to be on the brink of bankruptcy before divesting a plan of employer securities was required, it concluded that plaintiff had failed to allege facts showing that the company was in a "dire situation" requiring it to discontinue offering company stock and divesting the plan of company securities.  <u>Id.</u> at 348, 349 n.13.  The facts that plaintiff relied on were that the costs of integrating an acquisition into the company were higher than publicly represented, the acquisition had a negative effect on the company's earnings, changes to the method of delivering products were causing severe disruptions in service, and there was a drastic reduction in demand for the company's

14

products.  Id. at 348.  The Court concluded that these were "bare allegations of fraud and other wrongdoing" which were insufficient to overcome the presumption of reasonableness, particularly where the price of the stock rebounded within about 2 months of the company's disappointing earnings release.  Id. at 348 n.13.

In Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243 (5th Cir. 2008), the price of company stock dropped about 40% when it was revealed that some employees were engaged in fraudulent energy transactions which had the effect of inflating the company's earnings by about 10% over a three-year period. Id. at 247.  The Court concluded, however, that the plaintiffs had failed to overcome the presumption of reasonableness because "[t]here [was] no indication that REI's viability as a going concern was ever threatened or that REI's stock was in danger of essentially becoming worthless."  Id.  "This is a far cry," the Court stated, "from the downward spiral in Moench, and much less grave than facts other courts routinely conclude are insufficient to rebut the Moench presumption."  Id.

In Wright v. Oregon Metallurgical Corp., 360 F.3d 1090 (9th Cir. 2004), the Court concluded that plaintiff had failed to allege facts sufficient to overcome the Moench presumption.[3]

_____

[3]  It should be noted that in Wright, the Court only assumed that the Moench standard applied but it did not specifically adopt the standard in that opinion.  See Wright, 360

There, the company's merger with another company, followed by a reverse stock split, caused the price of the company stock to drop from $28.94 per share to $7.94, per share. <u>Id.</u> at 1095-96. The Court concluded that these facts were insufficient to overcome the presumption of reasonableness because the case "did not present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of self-dealing." <u>Id.</u> at 1098. The Court noted further that the company's published earnings and financial statements "demonstrate that Oremet was a far cry from the sort of deteriorating financial circumstances involved in <u>Moench</u> and was, in fact, profitable and paying substantial dividends throughout that period." <u>Id.</u> at 1099. The Court stated that "mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the <u>Moench</u> presumption." <u>Id.</u>

In this case, although the complaint's allegations perhaps demonstrate that Fifth Third's foray into subprime lending was ill-conceived and ill-considered, in light of the comparators just discussed, the Court concludes that Plaintiffs have failed to allege facts which overcome the presumption that Defendants' decision to remain invested in Fifth Third stock was

---

F.3d at 1097, 1097 n.3.  The Ninth Circuit did, however, adopt <u>Moench</u> in a recent decision.  <u>See</u> <u>Quan v. Computer Serv. Corp.</u>, 623 F.3d 870 (9th Cir. 2010).

16

reasonable.  The complaint demonstrates that Fifth Third took
substantial write-downs of non-performing assets during the class
period and that it was required to take measures to bolster its
Tier 1 capital, including selling shares of preferred stock to
the government under the Capital Purchase Program.[4]  The
complaint also demonstrates that the price of Fifth Third stock
declined during the class period from $25.61 in December 2007,
Complaint ¶ 50, to a low of $2.85 per share on January 22, 2009.
Complaint ¶ 177.  The complaint also shows, however, that the
price of Fifth Third rebounded substantially from that low and
was trading at $10.24 per share as of September 18, 2009.
Complaint ¶ 50.  Nevertheless, the 75% decline in the price of
Fifth Third stock during the class period alleged by the
complaint is commensurate with declines in the stock prices in
the cases discussed above which were insufficient as a matter of
law to overcome the presumption of prudence.  E.g. Wright, 360
F.3d at 1095-96 (72% decline in price insufficient to overcome

---

[4]     The complaint states that Fifth Third's sale of
preferred securities to the government occurred under the
Troubled Asset Relief Program ("TARP") and is evidence of Fifth
Third's weakened financial condition.  Complaint ¶ 178.  The
complaint then goes on to provide the definition of "troubled
assets."  While a component of the TARP program, the sale of
preferred securities to the government occurred under the Capital
Purchase Program and did not involve a direct purchase of toxic
assets or bad loans by the government.  Thus, the complaint
incorrectly implies that the government acquired Fifth Third's
bad loans.  As explained further, infra, only viable and
financially healthy financial institutions were permitted to
participate in the Capital Purchase Program.

presumption of reasonableness).

On the other hand, the complaint states that Fifth Third is "a diversified financial services company" with "16 affiliates and 1,311 full-service Banking Centers."  Complaint ¶ 28.  In other words, the complaint suggests that Fifth Third is and was a viable, on-going concern despite the problems created by its alleged subprime loan portfolio.  Plaintiffs dispute the relevance of Fifth Third's viability in assessing the prudence of maintaining employer securities in the Plan, Doc. No. 59, at 43, and thus, as Defendants point out, apparently do not dispute that Fifth Third was not in danger of collapsing during the class period.  Plaintiffs could not be more wrong, however, about the relevance of Fifth Third's ongoing viability to the issue whether they can overcome the presumption of prudence.  As the cases discussed supra indicate, the fact that the company remained viable despite a substantial drop in the stock price is a strong indicator that no breach of fiduciary duty occurred by remaining invested in employer securities.

While the complaint relies on allegations that some analysts downgraded Fifth Third stock from "hold" to "sell" or otherwise recommended against purchasing Fifth Third stock to establish imprudence, complaint ¶¶ 182-83, Fifth Third has submitted SEC filings indicating that several large state pension funds continued to hold, and in some cases actually increased

18

their positions in Fifth Third stock during the class period.
Doc. No. 56-9; see City of Monroe Employees Ret. Sys. v.
Bridgestone Corp., 399 F.3d 651, 655 n.1 (6th Cir. 2005)(court
may take judicial notice of public records on a Rule 12(b)(6)
motion).  In fact, the New York State Teachers Retirement System
quadrupled its position in Fifth Third stock between March 31,
2007 and December 31, 2008.  Plaintiffs again dispute the
relevance of this information, but in the Court's view, the fact
that other pension funds held and increased their positions in
Fifth Third stock is analogous to the situation Kuper where the
Court held that the plan fiduciaries acted prudently because
several analysts recommended holding the company's stock.  See
supra at 13.

        Moreover, while the complaint views Fifth Third's
participation in the Capital Purchase Program ("CPP") as a stigma
and a sign of financial stress, the Treasury Department states
that the purpose of the CPP was "to stabilize the financial
system by providing capital to viable financial institutions of
all sizes throughout the nation." See Capital Purchase Program
(available at http://www.financialstability.gov/roadtostability/
capitalpurchaseprogram.html)(visited November 18, 2010) (emphasis
added).  Indeed, the Treasury Department goes on to state that
"[p]articipation [in the CPP] was reserved for healthy, viable
financial institutions that were recommended by their applicable

19

federal banking regulator." <u>See</u> Factsheet on Capital Purchase
Program (available at http://www.financialstability.gov/
roadtostability/CPPfactsheet.htm) (visited November 18, 2010)
(emphasis added).  Thus, Fifth Third's participation in the CPP
is actually a sign of its viability and another indication that
the Defendants' decision to remain invested in Fifth Third stock
was not imprudent.

          The foregoing discussion should sufficiently illustrate
that the complaint fails to plead facts necessary to overcome the
presumption of reasonableness.  While the Court must accept that
Fifth Third embarked on an improvident and even perhaps
disastrous foray into subprime lending, which in turn caused a
substantial decline in the price of its common stock, the
complaint fails to establish that Fifth Third was in the type of
dire financial predicament sufficient to establish a breach of
fiduciary duty under <u>Kuper</u> and <u>Moench</u>.  Fifth Third remained a
viable company throughout the class period and, while not back to
its pre-class period level, Fifth Third stock has rebounded
substantially from its nadir.  The complaint fails to establish
any facts which would have caused a reasonable fiduciary to cease
offering Fifth Third stock as an investment option and/or divest
Fifth Third stock from the Plan entirely.  Indeed, as indicated,
several large pension funds actually increased their holdings in
Fifth Third stock during the class period.  Finally, the Court

20

finds that it makes little or no difference to the analysis that
Plaintiffs allege that the price of Fifth Third stock was
artificially inflated during the class period due to its lending
practices. As the Court stated in <u>Kirschbaum</u>:

> Kirschbaum contends that the court's presumption in
> favor of continued company stock investment should not
> apply at all where allegations, like his, relate to the
> fiduciaries' knowing purchases of stock at an
> artificially inflated price. <u>Moench</u>, Kirschbaum
> argues, concerned a "mere" failure to diversify. We
> reject this limitation. The distinction between these
> allegations is not only often elusive, but hardly
> justified by <u>Moench</u> itself. The opinion dwelt at
> length on the Benefits Committee's internal discussions
> based on their insider knowledge and fears about the
> company's dire financial prospects. <u>More to the point,
> there is no principled difference between how a
> fiduciary should respond to "artificial inflation" of
> the stock price as opposed to other sorts of negative
> insider information. Consequently, the standard of
> judicial review applicable to such decisions should not
> generally turn on pleading artifices. The Moench
> presumption logically applies to any allegations of
> fiduciary duty breach for failure to divest an EIAP or
> ESOP of company stock.</u>

526 F.3d at 254 (emphasis added).

The complaint fails to allege facts demonstrating the
Defendants' decision to continue to allow plan participants to
invest in Fifth Third stock was imprudent. The Court agrees with
Defendants that Plaintiffs are generally attempting to challenge
the wisdom of Fifth Third's business judgment and/or attempting
to recover damages based on alleged mismanagement of the company,
neither of which are actionable theories of recovery under ERISA.
See <u>Kuper</u>, 66 F.3d at 1456 ("Under ERISA, purely business

21

decisions by an ERISA employer are not governed by section 1104's
fiduciary standards.")(quoting <u>Berlin v. Michigan Bell Tele. Co.</u>,
858 F.2d 1154, 1163 (6th Cir. 1988)); <u>Husvar v. Rapoport</u>, 430
F.3d 777, 782 (6th Cir. 2005) ("A claim that company directors
did not operate the business itself in conformity with sound
business practices does not, however, implicate the protections
afforded by ERISA.").

Accordingly, Defendants' motion to dismiss Plaintiffs'
breach of fiduciary duty claim to the extent it relies on the
continued offering of and failure to divest of Fifth Third common
stock is well-taken and is **GRANTED**.

### B. <u>Failure to Provide Complete and Accurate<br>Information About Fifth Third Stock</u>

Count I also alleges that Defendants breached their
fiduciary duty by failing to provide plan participants with
complete and accurate information about Fifth Third stock.  The
alleged misstatements and omissions to which the complaint refers
(paragraphs 113-163) for the most part were made in corporate SEC
filings such as Forms 10-Q and 10-K.  Additionally, the complaint
alleges that Fifth Third made misleading statements in press
releases and other public fora, such as presentations to industry
analysts.  Generally speaking, the complaint alleges that the
statements and omissions were misleading because Fifth Third
failed to disclose such information as changing from its
traditional conservative lending philosophy, its deteriorating

22

Tier 1 capital quality, the qualifications of its Alt-A
borrowers, its failure to set aside adequate reserves for non-
performing loans, and its failure make timely reserves for non-
performing loans.  Fifth Third argues that these alleged
misstatements and omissions are not actionable under ERISA
because SEC filings are not statements made to participants in a
fiduciary capacity.  Plaintiffs, on the other hand, contend that
these statements were made in a fiduciary capacity because the
Plan and the Plan's summary plan description incorporate by
reference Fifth Third's SEC filings.

    The principal requirement under ERISA for a breach of
fiduciary duty claim based on a misstatement or omission is that
the statement must have been made in the defendant's fiduciary
capacity.  Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 433
(6th Cir. 2006).  The Court first notes that to the extent the
complaint relies on public statements, such as press releases and
statements made during conference calls and group presentations,
concerning the financial outlook or financial performance of
Fifth Third, the complaint fails to state a claim for breach of
fiduciary duty.  These statements were not made in a fiduciary
capacity and are not actionable as a matter of law. In re Ferro
Corp. ERISA Lit., 422 F. Supp.2d 850, 865 (N.D. Ohio 2006);
Complaint ¶¶ 114, 116, 119, 120, 121, 122, 135, 136, 137, 140,
153, 158, 159, 160, 161.

Whether the defendant speaks in a fiduciary capacity when SEC filings are incorporated by reference into plan documents is yet another area of ERISA which has engendered a split of authority and has not been resolved by the Sixth Circuit Court of Appeals.  Compare In re AEP ERISA Lit., 327 F. Supp.2d 812, 825 (S.D. Ohio 2004)(SEC filings incorporated by reference into plan documents are fiduciary statements), with, Shirk v. Fifth Third Bancorp, No. 05-cv-049, 2009 WL 692124, at *17 (S.D. Ohio Jan. 29, 2009) (defendants act in a corporate capacity when making statements in SEC filings), and, Benitez v. Humana, Inc., No. 3:08CV-211-H, 2009 WL 3166651, at *10 n.6 (W.D.Ky. Sept. 30, 2009)("[T]he preparation of SEC filings is not a fiduciary act for purposes of ERISA, even if the SEC filings are incorporated by reference into ERISA documents."); see also In re Lehman Brothers Sec. & Erisa Lit., 683 F. Supp.2d 294, 300(S.D.N.Y. 2010) (stating that "emerging caselaw makes clear that those who prepare SEC filings do not become ERISA fiduciaries through those acts" even where such filings are incorporated into the summary plan description).

To the extent that the weight of opinion on this issue is evenly distributed, the Court agrees with Defendants that Varity Corp. v. Howe, 516 U.S. 489 (1996), breaks the tie.  In Varity, the Court held that a defendant does not act as a fiduciary when he makes statements about the company's financial

24

condition.  Id. at 504.  Rather, to act as a fiduciary, the
defendant must intentionally connect his statements about the
financial status of the company to the ERISA benefit plan.  Id.
In this case, the alleged misstatements and omissions identified
in the complaint all were made in the context of filing routine
financial disclosures required under the federal securities laws
and regulations.  There are no factual allegations, however,
which indicate that the speaker was intentionally connecting his
statements about Fifth Third's financial condition to the Fifth
Third Stock Fund.  Accordingly, the Court concludes that the
complaint fails to allege facts from which it can reasonably be
inferred that the alleged misstatements and omissions were made
in a fiduciary capacity.

       Accordingly, Defendants' motion to dismiss this aspect
of Count I is well-taken and is **GRANTED.**

       Plaintiffs also allege in Count I that Defendants
breached their fiduciary duties to the plan participants by not
disclosing negative information about Fifth Third of which they
were aware.  ERISA does not impose a duty on fiduciaries to
disclose information to plan participants beyond what the statute
itself requires.  Sprague v. General Motors Corp., 133 F.3d 388,
405-06 (6th Cir. 1998) ("It would be strange indeed if ERISA's
fiduciary standards could be used to imply a duty to disclose
information that ERISA's detailed disclosure provisions do not

require to be disclosed."); <u>In re Ferro Corp. Erisa Lit.</u>, 422 F. Supp.2d 850, 864 (N.D. Ohio 2006)(ERISA fiduciaries have no duty to disclose non-public information about the company's financial condition). Additionally, as Defendants accurately point out, under the efficient market theory, any negative information disclosed about Fifth Third would have been immediately assimilated by the market and reflected in the price of Fifth Third stock. Thus, earlier disclosure of the alleged omissions by the Defendants would not have prevented the plan participants from experiencing the decline the market value of their Fifth Third shares. <u>See</u> <u>Edgar</u>, 503 F.3d at 350;

Therefore, Count I fails to state a claim for relief for breach of fiduciary duty based on Defendants' alleged omissions and misstatements. Accordingly, Defendants' motion to dismiss Count I is well-taken and is **GRANTED.**

## C. <u>Counts II, III, and IV</u>

Count II of the complaint alleges that the Defendants breached their fiduciary duty to the Plan participants by failing to monitor the performance of others who permitted the Plan to invest in Fifth Third common stock which, as already stated, they contend was an imprudent investment. Count III of the complaint alleges that the plan fiduciaries administered the Plan under a conflict of interest because they were compensated in part with Fifth Third stock and granted stock options. Count IV of the

26

complaint alleges that the Defendants failed to remedy or correct the alleged breaches of fiduciary duty outlined in Count I of the complaint concerning allowing the Plan to invest in Fifth Third stock.  Each of these claims is derivative of and dependent on proof of a primary breach of fiduciary duty.  As already discussed, the complaint fails to allege facts to overcome the presumption that the plan fiduciaries' decision to allow the plan to remain invested in Fifth Third stock was reasonable.  Since Count I - the primary claim for breach of fiduciary duty in this case - fails to state a claim for relief, each of these derivative claims fails as a matter of law.  Edgar, 503 F.3d at 349 n.13; In re Harley-Davidson, Inc. Sec. Lit., 660 F. Supp.2d 953, 969-70 (E.D.Wis. 2009); In re RadioShack Corp. ERISA Lit., 547 F. Supp.2d 606, 616 (N.D.Tex. 2008).

Accordingly, Defendants' motion to dismiss Counts II, III, and IV is well-taken and is **GRANTED.**

IV.  Leave to Amend the Complaint

In their memorandum in opposition to the motion to dismiss, Plaintiffs ask the Court for leave to amend the complaint in the event Defendants' motion is granted.  A request to amend the complaint in this fashion is not proper.  Plaintiffs have not filed a separate and properly supported motion for leave to amend and they are not entitled to an advisory opinion on the weaknesses of their claims.  PR Diamonds, Inc. v. Chandler, 364

F.3d 671, 699-700 (6th Cir. 2004);  <u>Begala v. PNC Bank, Ohio,</u>

<u>Nat. Ass'n</u>, 214 F.3d 776, 783-84 (6th Cir. 2000).

      Accordingly, leave to amend the complaint is not well-

taken and is **DENIED.**


        **IT IS SO ORDERED**


Date November 24, 2010                s/Sandra S. Beckwith
                                  Sandra S. Beckwith
                    Senior United States District Judge