# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |
|---|---|
| DUDENHOEFFER, *et al*., <br><br> Plaintiffs <br><br> v. <br><br> FIFTH THIRD BANCORP, *et al.*, <br><br> Defendants | Civil Action No. 1:08-CV-538-SSB |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement ("Settlement Agreement") is entered into, by and through duly authorized counsel, by (i) the Named Plaintiffs in the above-captioned Action for themselves and on behalf of the Settlement Class and the Plan, and (ii) the Defendants.

WHEREAS, Named Plaintiffs in the above-captioned Action assert various Claims for relief under ERISA against Defendants, all of which Claims are denied by Defendants; and

WHEREAS, the Parties desire to promptly and fully resolve and settle with finality the Action and resolve and discharge Plaintiffs' Released Claims (as defined herein);

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described, acknowledged by each of them to be fair, reasonable and in the best interests of the Settlement Class and intending to be legally bound, do hereby mutually agree as follows:

## 1. **DEFINITIONS**

As used in this Settlement Agreement, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1 "Action" means *John Dudenhoeffer, et al. v. Fifth Third Bancorp, et al*, Civil Action No. 1:08-CV-538-SSB (S.D. Ohio).

1.2 "Agreement Execution Date" means the date on which the final signature is affixed to this Settlement Agreement.

1.3 "Affiliate" means, with respect to a Person, any entity that owns or controls, is owned or controlled by, or is under common ownership or control with that Person.

1.4 "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

1.5 "CAFA Notice" means any notice of this proposed Settlement given to the appropriate federal and state officials, as provided by CAFA, to the extent Defendants determine to provide said notice. The cost and expense associated with providing any CAFA Notice shall be borne by Defendants.

1.6 "CAFA Notice Recipients" has the meaning set forth in Section 2.2.5.

1.7 "Case Contribution Award(s)" means the monetary amount awarded by the Court to be paid by Defendants to each Named Plaintiff in recognition of the Named Plaintiffs' assistance in the prosecution of this Action, for which Class Counsel may seek an amount not exceeding $10,000 per Named Plaintiff payable from the Settlement Fund. Any such Case Contribution Award shall be subject to the approval of the Court as stated in Section 10.2 below.

1.8 "Claims" means any and all claims, counterclaims, crossclaims, complaints, charges, demands, actions, causes of action, judgments, debts, expenses, losses, liabilities, forfeitures, damages, promises and obligations, including attorneys' fees, expenses and litigation costs.

1.9 "Class Counsel" means Kessler Topaz Meltzer & Check, LLP and Gainey McKenna & Egleston.

1.10 "Class Notice" means the forms of notice appended as Exhibits A and B to the proposed Preliminary Approval Order, which Preliminary Approval Order is attached hereto as Exhibit 1.

1.11 "Committee Defendants" means The Fifth Third Bank Pension, Profit Sharing and Medical Plan Committee, Paul L. Reynolds, Nancy Phillips, Greg D. Carmichael, Robert Sullivan, and Mary Tuuk.

1.12 "Complaint" means the Consolidated Class Action Complaint filed on September 21, 2009 in the Action, Dkt. No. 54.

1.13 "Court" means the United States District Court for the Southern District of Ohio.

1.14 "Defendants" means each of the Parties named as a defendant in the Action, namely the Committee Defendants, Kevin T. Kabat, and Fifth Third.

1.15 "Defendants' Released Claims," subject to the provisions of Section 3 herein regarding scope of releases, means any and all Claims of Defendants related to the institution or prosecution of the Action or relating to the settlement of any of Plaintiffs' Released Claims.

1.16 "Defendants' Released Persons" means the Named Plaintiffs, the Settlement Class, Plaintiffs' Counsel, and each of their appointed representatives.

1.17 "Effective Date" means the date upon which the Final Approval Order and Judgment becomes Final.

1.18 "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, as amended.

1.19 "Escrow Account" means an account at a financial institution established for the deposit of any amounts related to the Settlement as funded by the Defendants in accordance with Sections 7.1.1 and 7.2.

1.20 "Fifth Third" or "Company" means Fifth Third Bancorp and each of its Affiliates, predecessors, and Successors-In-Interest.

1.21 "Fifth Third Stock" or "Company Stock" means the common stock of Fifth Third Bancorp.

1.22 "Fifth Third Stock Fund" or "Company Stock Fund" means the stock fund comprised of Fifth Third Stock, which has been an investment option in the Plan.

1.23 "Final" shall mean, with respect to any judicial ruling or order, a judicial ruling or order that is final for purposes of 28 U.S.C. § 1291, and that: (a) the time has expired to file an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari to the Supreme Court of the United States or other writ ("Review Proceeding") with respect to such judicial ruling or order with no such Review Proceeding having been filed; or (b) if a Review Proceeding has been filed with respect to such judicial ruling or order, (i) the judicial ruling or order has been affirmed without any material modification that the Defendants, in their sole discretion, consider unacceptable (provided the Parties meet and confer in good faith regarding any material modification prior to any rejection by Defendants) and with no further right of review, or (ii) such Review Proceeding has been denied or dismissed with no further right of review.

1.24 "Final Approval Hearing" shall have the meaning set forth in Section 2.2.1.1.

1.25 "Final Approval Order and Judgment" means an order by the Court that approves the fairness, reasonableness, and adequacy of the Settlement as stated in Section 2.2.6 and is substantially in the form hereto as Exhibit 2.

1.26 "Financial Institution" has the meaning stated in Section 7.1.1.

1.27 "Immediate Family Members" mean the parents, children, siblings, and spouses of any of the Defendants.

1.28 "Named Plaintiffs" or "Plaintiffs" mean John Dudenhoeffer and Alireza Partovipanah.

1.29 "Net Settlement Fund" means the Settlement Fund less the costs for provision of Class Notice, Publication Notice, Settlement Administration costs, taxes, tax-

related expenses, Court-approved attorneys' fees, Case Contribution Awards and litigation costs, and/or other costs the Court deems payable from the Settlement Fund.

1.30    "Non-Monetary Relief" means the changes to the Plan described in Section 7.4.

1.31    "Objection" has the meaning stated in Section 2.2.1.

1.32    A "Party" or "Parties" means one or more of the Named Plaintiffs and Defendants.

1.33    "Person" means an individual, partnership, corporation, governmental entity or any other form of entity or organization.

1.34    "Plaintiffs' Released Claims," subject to the provisions of Section 3 herein regarding scope of releases, mean any and all Claims of any nature whatsoever, whether individual, representative, or derivative, by or on behalf of the Plan, the Named Plaintiffs, or the Settlement Class, including their respective heirs, beneficiaries, executors, administrators, Successors, and assigns that: (a) were brought or could have been brought in the Action and arise out of the same or substantially similar facts, circumstances, situations, transactions, or occurrences as those alleged in the Action during the Settlement Class Period; or (b) were brought or could have been brought under ERISA based on or relating to the investment of Plan assets in Fifth Third Stock by or through the Plan during the Settlement Class Period.

1.35    "Plaintiffs' Released Persons" shall mean solely with respect to the Released Claims: Defendants, as well as Defendants' affiliates, heirs, trustees, estates, executors or administrators, attorneys, personal or legal representatives, accountants, auditors, and financial or investment advisors, in their capacity as such.

1.36    The "Plan" means the Fifth Third Bancorp 401(k) Savings Plan, formerly known as the Fifth Third Bancorp Master Profit Sharing Plan.

1.37    "Plan Administrator" means Fifth Third Bancorp Pension, Profit Sharing and Medical Plan Committee.

1.38    "Plan of Allocation" means the Plan of Allocation approved by the Court as contemplated by Section 2.2.6.1 and described in Section 8.3.2 and in the proposed form attached as Exhibit 3.

1.39    "Plan Trustee" means Great-West Trust Company, L.L.C., the current trustee.

1.40    "Plaintiffs' Counsel" means Class Counsel and Strauss Troy Co., LPA and Drew & Ward Co., LPA.

1.41    "Preliminary Approval Motion" has the meaning stated in Section 2.2.

1.42    "Preliminary Approval Order" has the meaning stated in Section 2.2.1 and that is substantially in the form attached as Exhibit 1.

1.43    "Publication Notice" means the form of notice appended as Exhibit B to the form of Preliminary Approval Order, attached as Exhibit 1.

1.44    "Released Claims" means collectively, Plaintiffs' Released Claims and Defendants' Released Claims.

1.45    "Review Proceeding" has the meaning stated in Section 1.23.

1.46    "Settlement" means the settlement to be consummated under this Settlement Agreement.

1.47    "Settlement Administrator" means RG/2 Claims Administration LLC, retained by Class Counsel to assist Class Counsel and the Plan Administrator with all administrative matters related to the Settlement as described in Sections 2.2.4 , 2.2.4.1, 7.1.3, 7.1.5, 8.3.2, and 8.3.3.

1.48    "Settlement Agreement" means this Settlement Agreement, including any modifications or amendments adopted pursuant to Section 11.5.

1.49    "Settlement Amount" means the sum of $6,000,000.00 (Six Million U.S. Dollars).

1.50    "Settlement Class" shall mean all Persons (excluding Defendants and their Immediate Family Members) who were participants in or beneficiaries (including alternate payees) of the Plan at any time between July 19, 2007 and January 15, 2016, and whose Plan account included investments in Fifth Third Stock.

1.51    "Settlement Class Member" means a member of the Settlement Class.

1.52    "Settlement Class Period" means the period from July 19, 2007 and January 15, 2016, inclusive.

1.53    "Settlement Fund" means the Settlement Amount deposited in the Escrow Account in accordance with Section 7.1.

1.54    "Settling Mediator" means Robert S. Kaiser, Circuit Mediator for the United States Court of Appeals for the Sixth Circuit.

1.55    "Successors" or "Successors-In-Interest" means a Party or Person's estate, legal representatives, heirs, successors, or assigns, including successors or assigns that result from corporate mergers or other structural changes, and any other Person who can make a legal claim by or through such Party or Person.

1.56    "Terminate," "Terminates," or "Termination" have the meaning stated in Section 9.1.

1.57   "Terminating Party" has the meaning stated in Section 9.1.

**2.    CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

The Settlement shall not become effective unless and until the following conditions have been either satisfied or waived in writing by the Party entitled to the benefit of the condition or obligation.  Except as otherwise provided in this Settlement Agreement, the Parties will use reasonable, good faith, best efforts to cause all of the following to occur, including supporting the Settlement through any Review Proceeding.

2.1   <u>Final Approval Order and Judgment</u>.  The Court must approve the Settlement and certify a Settlement Class for settlement purposes, and the Court's approval of the Settlement must become Final, in accordance with the following steps set forth in this Section 2.

2.2   <u>Motion for Preliminary Approval of Settlement</u>:

2.2.1   The Parties will, in good faith, use best efforts to enable the Named Plaintiffs to file a motion ("Preliminary Approval Motion") with the Court for the issuance of an order (the "Preliminary Approval Order") substantially in the form attached as Exhibit 1, including the exhibits thereto.  The Preliminary Approval Order shall describe how the recipients of the Class Notice and CAFA Notice Recipients (defined below) may object ("Objection") to the Settlement.  To be considered timely, the Objection must be received by the Court and Parties no later than twenty-one (21) calendar days before the Final Approval Hearing.  The Objection must state any and all objections to this Settlement and include any supporting papers and arguments.  Any Objector who wishes to appear at the Final Approval Hearing, either individually or through qualified counsel, must file a notice of intention to appear at the Final Approval Hearing no later than twenty-one (21) calendar days prior to the Final Approval Hearing.  Class Counsel shall file a response to any Objections within seven (7) calendar days prior to the date of the Final Approval Hearing.

2.2.1.1 The Parties shall, in good faith, use best efforts to:  (a) secure expeditious entry of the Preliminary Approval Order by the Court; and (b) seek a date for the Final Approval Hearing for the Court to decide whether the Settlement is fair, reasonable, and adequate pursuant to FED. R. CIV. P. 23 (the "Final Approval Hearing").  The Parties shall request that the Final Approval Hearing be set at least one hundred (100) calendar days from the date the Preliminary Approval Motion is filed, and at least sixty (60) calendar days following the mailing of the Class Notice and publication of the Publication Notice.

6

2.2.2 <u>Class Certification:</u> In connection with the proceedings on preliminary and final approval of the proposed Settlement, Named Plaintiffs shall, through Class Counsel, seek orders (preliminary and final, respectively) certifying the Settlement Class as a non opt-out class pursuant to FED. R. CIV. P. 23(b)(1). For Settlement purposes only, and to effectuate this Settlement Agreement, Defendants will not object to such certification of the Settlement Class on the terms in this Settlement Agreement. In the event the Settlement is not approved for any reason, the certification of the Settlement Class shall be null and void and of no further force or effect.

2.2.3 <u>Entry of Preliminary Approval Order:</u> The Court shall enter a Preliminary Approval Order substantially in the form annexed hereto as Exhibit 1. If the Court does not enter the Preliminary Approval Order (either initially, or if a Review Proceeding has been instituted, then after the conclusion of a Review Proceeding, if any), then (a) there shall be no obligation by the Defendants to pay any portion of the Settlement Amount, and (b) any Party may Terminate this Settlement Agreement pursuant to Section 9.1.

2.2.4 <u>Implementation of Notice Plan:</u> Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice and Publication Notice, substantially in the forms attached as Exhibits A and B, respectively, to the Preliminary Approval Order, to be disseminated to the Settlement Class within forty-five (45) calendar days following entry of the Preliminary Approval Order. The Settlement Administrator shall cause the Publication Notice to be published one time in the *Cincinnati Enquirer* and PR Newswire within forty-five (45) days following entry of the Preliminary Approval Order.

  2.2.4.1 In the event that a Class Notice sent by mail is returned as undeliverable, the Settlement Administrator shall make reasonable efforts to obtain a valid mailing address. Following each search that results in a corrected address, the Settlement Administrator shall promptly resend the Class Notice to the Settlement Class Member by first-class mail, postage prepaid.

2.2.5 <u>CAFA Notice:</u> Pursuant to CAFA, Defendants shall have the option of preparing and providing a CAFA Notice to the Attorney General of the United States and the Attorneys General of those states in which, based on information reasonably available to Defendants, it appears that members of the Settlement Class reside (the "CAFA Notice Recipients") within ten (10) calendar days after the filing of the Preliminary Approval Motion.

2.2.6 <u>Final Approval Hearing:</u>

  2.2.6.1 The Named Plaintiffs shall file a motion seeking final approval of the Settlement ("Final Approval Motion") with the Court no later than thirty-one (31) calendar days before the Final Approval

7

Hearing is scheduled. In the Final Approval Motion, the Named Plaintiffs will request that the Court determine, at or after the Final Approval Hearing: (a) whether to enter a Final Approval Order and Judgment, substantially in the form attached hereto as Exhibit 2, granting final approval of the Settlement and dismissing the Action with prejudice; (b) whether the distribution of the Net Settlement Fund as provided in the Plan of Allocation should be approved or modified; (c) the amount of legal fees and expenses to be awarded to Class Counsel as contemplated by Section 10 of this Settlement Agreement; and (d) the amount of a Case Contribution Award to be awarded to the Named Plaintiffs. Any supplemental briefing in further support of the Settlement shall be filed no later than seven (7) calendar days prior to the date of the Final Approval Hearing.

2.2.6.2 The Final Approval Motion shall also ask the Court to: permanently enjoin (i) the members of the Settlement Class from bringing in any forum any of Plaintiffs' Released Claims against any of Plaintiffs' Released Persons, and (ii) Defendants from bringing in any forum any of Defendants' Released Claims against any of Defendants' Released Persons.

2.2.6.3 At the Final Approval Hearing, the Named Plaintiffs and Defendants shall request that the Court rule on any Objections to the Settlement by any Class Members or CAFA Notice Recipient, and find that the Settlement is fair, reasonable and adequate, and enter the Final Approval Order and Judgment.

2.2.6.4 The Parties agree to support entry of the Final Approval Order and Judgment, including supporting the Settlement through any Review Proceeding. Defendants shall not take any position on the matters described in clauses (b), (c), or (d) of Section 2.2.6.1, so long as disposition of those matters is substantially in accordance with the provisions of Section 8 and Section 10 of this Settlement Agreement. The Parties otherwise covenant and agree to reasonably cooperate with one another and to take all actions reasonably necessary to effectuate the Settlement Agreement and to obtain a Final Approval Order and Judgment.

2.2.6.5 The Settlement in this Settlement Agreement is expressly conditioned upon the entry of the Final Approval Order and Judgment by the Court, and the Final Approval Order and Judgment becoming Final in accordance with Sections 1.24 and 2. In the event that the Court, or any court in a Review Proceeding, approves the Settlement but does so on terms substantively different than those set forth in this Settlement Agreement, any Party may Terminate the Settlement pursuant to Section 9.1.

3.    **SCOPE OF RELEASES**

3.1    Upon the Effective Date, the Named Plaintiffs (or their Successors) shall and hereby do conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge, and the Plan and the Settlement Class shall, by operation of the Final Approval Order and Judgment, be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Plaintiffs' Released Persons from all of Plaintiffs' Released Claims.

3.2    Upon the Effective Date, Defendants (or their Successors) shall conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge Defendants' Released Persons from all of Defendants' Released Claims.

3.3    The releases and discharges set forth in Sections 3.1 and 3.2 shall not include the release or discharge of any rights or duties of the Parties arising out of this Settlement Agreement, including the express warranties and covenants contained herein.

4.    **COVENANTS**

4.1    Covenants Not to Sue:

4.1.1    From and after the Effective Date, Named Plaintiffs, on their own behalf and on behalf of the Settlement Class and the Plan, covenant and agree: (a) not to file any Claim (whether individually, derivatively, on behalf of a class, or in any other capacity) released under Section 3 against any of Plaintiffs' Released Persons; and (b) that the foregoing covenant and agreement shall be a complete defense to any such Claims against any of Plaintiffs' Released Persons. Nothing herein, however, shall preclude any action or claim related to the interpretation or enforcement of this Settlement Agreement.

4.1.2    From and after the Effective Date, Defendants covenant and agree: (a) not to file any Claim released under Section 3 against any of Defendants' Released Persons; and (b) that the foregoing covenants and agreements shall be a complete defense to any such Claims against any of Defendants' Released Persons. Nothing herein, however, shall preclude any action or claim related to the interpretation or enforcement of this Settlement Agreement.

4.2    Taxation of Settlement Amount:  Named Plaintiffs acknowledge on their own behalf, and on behalf of the Settlement Class, that none of the Plaintiffs' Released Persons has any liability, responsibility and/or obligation for paying any taxes due on funds deposited in the Settlement Fund, including those funds that Class Counsel receives from the Settlement Amount, should any be awarded pursuant to Section 10 of this Settlement Agreement. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Settlement Amount. Named Plaintiffs and the Settlement Class intend that the

amounts allocated pursuant to the Plan of Allocation will be used to restore claimed losses to the Plan on account of the investment in Fifth Third Stock and are intended by Named Plaintiffs and the Settlement Class to be "restorative payments" within the meaning of Revenue Ruling 2002-45.

**5.** **REPRESENTATIONS AND WARRANTIES**

5.1     Named Plaintiffs' Representations and Warranties:

5.1.1     Named Plaintiffs represent and warrant, as of the date hereof and as of the Effective Date, that they have not sold, assigned, transferred, hypothecated, pledged or encumbered, in whole or in part, voluntarily or involuntarily, any of Plaintiffs' Released Claims against any of Plaintiffs' Released Persons.

5.1.2     Named Plaintiffs, on their own behalf and on behalf of the Settlement Class, represent and warrant, from and after the Effective Date, that they and the Settlement Class shall have no surviving Claim against any of the Plaintiffs' Released Persons with respect to the Plaintiffs' Released Claims.

5.2     Parties' Representations and Warranties:  Each of the Parties, on his, her, or its behalf only, represents and warrants, severally and not jointly, to each of the other Parties:

5.2.1     That he, she, or it is voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among his, her or its counsel, with the assistance of the Settling Mediator; that in executing this Settlement Agreement he, she, or it is relying solely upon his, her or its own judgment, belief and knowledge, and the advice and recommendations of his, her, or its own independently selected counsel, concerning the nature, extent and duration of his, her, or its rights and Claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as expressly provided herein, he, she, or it has not been influenced to any extent whatsoever in entering into this Settlement Agreement by any representations, warranties, or statements, or omissions pertaining to any of the foregoing matters by any Party or by any Person representing any Party.

5.2.2     That he, she, or it assumes the risk of mistake as to facts or law.

5.2.3     That he, she, or it has carefully read the contents of this Settlement Agreement, and that he, she, or it has freely entered into this Settlement Agreement.

5.2.4     That he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary.

5.3    <u>Signatories' Representations and Warranties:</u>  Each individual executing this Settlement Agreement on behalf of any other Person or the Settlement Class does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

## 6.    **NO ADMISSION OF LIABILITY**

6.1    <u>No Decision on the Merits:</u>  Each of the Parties understands and agrees that:  (a) this Settlement Agreement embodies a compromise settlement of disputed claims for the purpose of avoiding the costs, disruptions, and uncertainties associated with further litigation; (b) nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement, shall be deemed to constitute any finding of fiduciary status under ERISA or wrongdoing by any of the Defendants, or give rise to any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or liability in the Action or any other proceeding; and (c) this Settlement Agreement and the payments made hereunder do not constitute a ruling on the merits, an admission as to any issue of fact or principle at law, or an admission of any liability or wrongdoing of any kind, and no Party shall assert or suggest otherwise.  Defendants have denied and continue to deny all of the claims and allegations made by Named Plaintiffs in the Action, specifically and expressly deny any liability or wrongdoing of any kind and that they ever engaged in any wrongful conduct, violation of law or breach of duty.

6.2    <u>Reliance on FRE 408:</u>  This Settlement Agreement has been executed in reliance upon the provisions of Federal Rule of Evidence 408 and all similar state rules precluding the introduction of evidence of settlement negotiations or agreements and neither the fact nor the terms of this Settlement Agreement shall be offered or received into evidence, or otherwise introduced in any action or proceeding, for any purpose, except (a) in an action or proceeding seeking to enforce or interpret the terms of this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Approval Order and Judgment, or (b) in an action or proceeding where the releases or covenants not to sue provided pursuant to Sections 3 and 4 of this Settlement Agreement may serve as a partial or complete bar to recovery.

## 7.    **THE SETTLEMENT FUND AND DEPOSITS INTO THE SETTLEMENT FUND**

7.1    <u>The Settlement Fund:</u>

7.1.1    No later than five (5) business days after the entry of the Preliminary Approval Order, Class Counsel shall:  (a) establish at a federally insured financial institution (the "Financial Institution") an account (the "Escrow Account") for the purpose of holding the Settlement Amount to be deposited into the Escrow Account by Defendants; and (b) provide notice to Defendants pursuant to Section 7.2 of the information needed to deposit the Settlement Amount into the Escrow Account.  The Escrow Account

shall be governed by an escrow agreement, which must be approved by the Defendants, but such agreement shall not be unreasonably withheld. The monies in the Escrow Account shall be considered a common fund created as a result of the Action.

7.1.2 The Settlement Fund shall include and retain interest and income earned thereon, for the benefit of the Settlement Class, and shall be invested only in United States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury with a maturity period not to exceed ninety (90) days, repurchase agreements collateralized by such securities, and mutual funds or money market accounts, provided that such funds or accounts invest exclusively in the foregoing securities.

7.1.3 The Settlement Administrator shall structure and manage the Settlement Fund to qualify as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treasury regulations promulgated thereunder. It is intended that the Settlement Fund be structured and administered to ensure, to the maximum degree possible, that the portion of the Settlement Fund that is contributed to the Plan pursuant to the Plan of Allocation will qualify for the favorable tax treatment available for tax-qualified plans and trusts under Sections 401(a) and 501(a) of the Internal Revenue Code. The Parties shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Final Approval Motion shall request that the Court's Final Approval Order and Judgment provide that once the Net Settlement Fund is transferred to the Plan, the Net Settlement Fund shall be considered "plan assets" of the Plan within the meaning of ERISA.

7.1.4 All taxes on the income of the Settlement Fund and tax-related expenses incurred in connection with the taxation of the Settlement Fund shall be paid out of the Settlement Fund. Defendants shall have no liability nor responsibility whatsoever for any such taxes or tax-related expenses. Reasonable fees and expenses incurred for or by any third-party vendor appointed by Class Counsel for calculation, allocation, and distribution pursuant to the Plan of Allocation shall also be paid from the Settlement Fund.

7.1.5 Class Counsel shall have signature authority over the Settlement Fund prior to the allocation of the Net Settlement Fund to the Plan, and shall, after providing reasonable advance written notice to Defendants, direct the Financial Institution to pay from the Settlement Fund all reasonable costs of administering the Settlement Fund without further order of the Court, which expenses may include: (a) reasonable expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the Settlement Fund; (b) payment of any taxes owed by the Settlement Fund; and (c) fees charged and expenses incurred by the Financial

Institution, the Plan Administrator or the Settlement Administrator for the associated administration of the Settlement or the allocation or distribution of the Net Settlement Fund pursuant to the Plan of Allocation.

7.1.6    Prior to the allocation of the Net Settlement Fund to the Plan, Class Counsel shall have sole responsibility for and shall instruct the Financial Institution to set aside appropriate reserves from the Settlement Fund for taxes and for the purpose of satisfying future or contingent expenses or obligations, including expenses of Settlement Fund administration, before any disbursement is made as provided in Section 8 of this Settlement Agreement. Defendants shall take no position, directly or indirectly, with respect to such matters.

7.1.7    Except as provided in Sections 7, 8, and 10 of the Settlement Agreement, no monies shall be paid to Class Counsel, Named Plaintiffs, the Settlement Class, or the Plan from the Settlement Fund.

7.1.8    The Parties acknowledge and agree that Defendants shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the Settlement Fund, for any expenses the Settlement Fund may incur, or for any taxes that may be payable by the Settlement Fund or any direct or indirect distributee therefrom.

7.2    <u>Funding of the Settlement Amount:</u>   Defendants shall transmit to the Financial Institution a check or wire in the amount of the Settlement Amount for deposit into the Settlement Fund within ten (10) business days after entry of the Preliminary Approval Order by the Court. In the event that the Court does not finally approve the Settlement, whether initially or, if a Review Proceeding has been instituted, then after conclusion of a Review Proceeding, if any, or the Final Approval Order and Judgment is reversed through a Review Proceeding, then the Settlement Amount, including any interest, less any administrative costs already incurred, shall be returned to Defendants pursuant to Section 9.1.

7.3    <u>Sole Monetary Contribution:</u>   The Settlement Amount to the extent approved by the Court, shall be the full and sole monetary obligation of Defendants in connection with the Settlement. Under this Settlement Agreement, Defendants shall pay the Settlement Amount into the Settlement Fund. No other fees or amounts are payable by Defendants pursuant to this Settlement Agreement at any time. The Settlement Amount specifically covers any Claims for any reasonable costs or expenses associated with or related to the Class Notice. Except as otherwise specified in this Settlement Agreement, Named Plaintiffs, the Settlement Class, and Class Counsel shall bear their own costs and expenses (including attorneys' fees) in connection with the Settlement, the negotiation and documentation of this Settlement Agreement, and securing all necessary court orders and approvals with respect to the same. Without limiting the intended scope of this paragraph, Defendants shall have no liability, responsibility, and/or

obligation to pay any taxes, fees, charges, costs and/or expenses arising out of and/or related to the investment of monies in the Settlement Fund, and the Parties agree that such expenses are satisfied (or are to be satisfied) by payment of, or from, the Settlement Amount.

7.4    <u>Non-Monetary Relief</u>.  In addition to the $6,000,000.00 Settlement Amount, the parties agree that Fifth Third, as settlor of the Plan, will make Plan design changes as part of the settlement (the "Non-Monetary Relief"). These Non-Monetary Relief Plan changes shall not be subject to amendment for the periods specified below. The Non-Monetary Relief shall consist of:

7.4.1   The freezing of the Fifth Third Stock Fund such that:

a.      Participants will be prohibited from investing all future employee, employer and rollover contributions into the Fifth Third Stock Fund.  No new participants in the Plan will be permitted to invest in the Fifth Third Stock Fund.

b.      Participants will be prohibited from transferring any or all of their existing account balance into the Fifth Third Stock Fund.

c.      Participants with existing account balances invested in the Fifth Third Stock Fund will be able to transfer their assets from this Fund to any other investment option offered in the Plan.  However, after the transfer of any balance out of the Fifth Third Stock Fund, they will be unable to transfer any prior transferred amounts back into the Fifth Third Stock Fund.

d.      Participants with existing account balances invested in the Fifth Third Stock Fund will still be able to elect to have their dividends from the Fifth Third Stock Fund reinvested into the Fifth Third Stock Fund.

e.      These changes will take effect on a date to be determined by Fifth Third but in no event later than twelve months following the Final Approval Order and Judgment.

f.      Fifth Third will amend the Plan document and effectuate the changes.  Fifth Third also retains the right to amend the Plan to reduce participation in or eliminate the Fifth Third Stock Fund as an investment option.

g.      In addition, a communication strategy will be developed by Fifth Third to educate participants about these changes and the benefits of asset allocation and diversification.

7.4.2   With respect to the vesting schedule for matching contributions:

14

a.   All participants are 100% fully vested in matching contributions made for plan years beginning after December 31, 2014.

b.   Matching contributions for plan years beginning before January 1, 2015 and all profit sharing contributions will still be subject to a 3 year cliff vesting schedule (0% vesting for the first two years, and 100% vesting after year three).

c.   The 100% vesting for matching contributions will not apply to any Company's qualified plan that Fifth Third may acquire in the future that is merged into the Fifth Third Bancorp 401(k) Savings Plan.

d.   Fifth Third retains the right to amend the Plan, including the vesting schedule applicable to matching contributions, in the future, but agrees not to amend the vesting schedule of the Plan to provide for a less generous schedule, for a period of less than five (5) years, unless otherwise required by fiduciary obligations or changes in the law.

7.4.3   With respect to Fifth Third's matching contributions:

7.4.3.1 Fifth Third currently funds Plan contributions in the form of cash (not shares) and agrees as part of the settlement not to change this for at least the next eight (8) years.

7.4.4   With respect to notices to Plan participants who currently have more than 20% of their account(s) invested in the Fifth Third Stock Fund:

a.   The Plan fiduciary will direct the record keeper of the Plan to send an annual notice to participants that have more than 20% of their account invested in Fifth Third Stock Fund and educate them about the benefits of asset allocation and diversification.

b.   This annual notification will be sent so long as the Fifth Third Stock Fund is in existence.

7.4.5   With respect to improving fiduciary training for Plan participants:

a.   The Fifth Third Bancorp Pension, Profit Sharing, and Medical Plan Committee members receive annual fiduciary training.

b.   Fifth Third agrees to increase this training to be conducted at least twice annually.

15

8. **PAYMENTS FROM THE SETTLEMENT FUND**

8.1     Parties' Expenses:  Except as otherwise provided for herein, Defendants and their counsel shall not charge any fees or expenses to the Settlement Fund.  All other costs not provided for herein that the Named Plaintiffs or the Settlement Class incur relating to the Settlement shall be borne by the Settlement Fund upon Court approval.

8.2     Expenses for Class Notice and Publication Notice:  Class Counsel shall direct the Financial Institution in writing to disburse from the Settlement Fund the payment of reasonable costs associated with the Class Notice and Publication Notice.

8.3     Disbursements from the Settlement Fund:  Class Counsel shall direct the Financial Institution to disburse money from the Settlement Fund as follows:

8.3.1   For taxes and expenses of the Settlement Fund, as provided in Section 7.1.4.

8.3.2   Class Counsel shall propose to the Court a Plan of Allocation, in substantial conformity to the one attached as Exhibit 3, which shall provide for the calculation, allocation, and distribution of the Net Settlement Fund.  Such Plan of Allocation shall provide the method by which the specific dollar amount to be allocated by the Plan Administrator to the Plan account of each member of the Settlement Class will be calculated.  The Plan of Allocation proposed by Class Counsel shall be sufficiently specific to allow the Settlement Administrator, at the direction of the Plan Administrator, to perform the calculations called for in the Plan of Allocation.  The Settlement Administrator shall be exclusively responsible and liable for calculating the amounts payable to the members of the Settlement Class pursuant to the Plan of Allocation, except to the extent any liability or claims related to the calculation of amounts payable arise from knowlingly inaccurate data as provided by the Plan Administrator.

8.3.3   Within thirty (30) days of the District Court entering a Preliminary Approval Order, Defendants will provide Class Counsel the names, last known addresses and Social Security Numbers of each member of the Settlement Class for purposes of effectuating distribution of Class Notice, and Plan participant data necessary to perform calculations pursuant to the Plan of Allocation. Neither Class Counsel nor the Settlement Fund shall bear any expenses associated with such requests, and Defendants shall have the sole obligation to pay for any such expenses.  Defendants shall take reasonable steps to verify the accuracy of the information provided. Upon transmittal of Defendant's data to Class Counsel, Plaintiffs and their counsel shall be responsible for the security of the data and shall take all necessary precautions to prevent its unauthorized disclosure.

8.3.4   As soon as reasonably practicable after the Effective Date, Class Counsel shall direct the Financial Institution to disburse the Net Settlement Fund to the Plan.  The Plan Administrator shall then be exclusively responsible for overseeing the distribution of the Net Settlement Fund to the members of the Settlement Class in accordance with the Plan of Allocation based on the calculations of the Settlement Administrator.  Further, the Plan Administrator shall be responsible for properly allocating the Net Settlement Fund to the Plan accounts of the Settlement Class Members, in accordance with the calculations of the Settlement Administrator.  Neither Defendants nor Class Counsel shall have any responsibility or liability for the Settlement Administrator's calculations or the distribution of the Net Settlement Fund to the members of the Settlement Class. Defendants, to the extent they were participants or beneficiaries of the Plan at any time during the Settlement Class Period, will be excluded from the Settlement Class and the Plan of Allocation.

8.3.5   For attorneys' fees and expenses, as described in Section 10.1.

8.3.6   The Case Contribution Awards, Plan of Allocation, and award of attorneys' fees and expenses as described in Section 10.1 and 10.2 are matters separate and apart from the Settlement between the Parties, and no decision by the Court or any other court concerning the Case Contribution Awards, Plan of Allocation, or award of attorneys' fees and expenses shall affect the validity of the Settlement Agreement, the releases or covenants granted herein, or the finality of the Settlement.

**9.      TERMINATION OF THE SETTLEMENT AGREEMENT**

9.1     Termination:  A Party may Terminate this Settlement as set forth in this Section 9, and the Settlement Agreement shall thereupon become null and void ("Terminate" or "Termination"), if the conditions set forth in Section 2 are not satisfied, unless the Parties mutually agree otherwise or the Party entitled to the benefit of the unsatisfied Settlement condition waives that Settlement condition.  A Party seeking to Terminate the Settlement Agreement (the "Terminating Party") must give notice of its intent to Terminate this Settlement to the other Parties in writing within fifteen (15) business days following the event giving rise to Termination.  Within thirty (30) business days after such notice is given by the Terminating Party, the Parties may mutually agree to modify this Settlement Agreement.  If the Parties do not mutually agree to modify this Settlement Agreement within thirty (30) business days after a Terminating Party gives notice of Termination to the other Parties, then the Termination shall become effective and the provisions of Section 9.1 will apply.  If the Settlement Agreement is Terminated, the Settlement shall be null and void, except the provisions in Sections 9.2.1, 9.2.2, and 9.2.3 (and any other Section expressly incorporated therein) of the Settlement Agreement shall survive any such Termination.  Notwithstanding anything in this Section 9.1, the Parties agree not to oppose any Review Proceeding by either Plaintiffs or Defendants of the Court's decision(s) (if any) to not finally approve

the Settlement, including Class Counsel's request for an award of attorneys' fees, litigation costs, and Case Contribution Awards for the Named Plaintiffs, unless the Party seeking such Review Proceedings is asserting a position or positions in the Review Proceedings that is/are inconsistent with this Settlement Agreement.

9.2     <u>Consequences of Termination of the Settlement Agreement:</u>   If the Settlement Agreement is Terminated and rendered null and void for any reason specified in Section 9.1, the following shall occur:

9.2.1   Within fifteen (15) business days following the Termination of the Settlement Agreement, Class Counsel shall return to Defendants the amount contributed to the Settlement Fund, with all interest and income earned, except that neither Class Counsel nor any other Person shall have an obligation to reimburse to the Settlement Fund the reasonable costs of the Class Notice, or other reasonable costs and expenses of the Settlement Fund incurred by the Settlement Fund under Section 7.1.5 of the Settlement Agreement.

9.2.2   The Action shall for all purposes with respect to the Parties revert to its status as of the day immediately before the Agreement Execution Date.

9.2.3   Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in this Action or any action or proceeding for any purpose, except in an action or proceeding arising under, or to give effect to a provision of, this Settlement Agreement.  The understandings and agreements contained in Sections 6.1 and 6.2 shall survive any termination of this Settlement Agreement.

9.3     In the event that the Effective Date does not occur, Class Counsel commit to work with counsel for Defendants to modify or amend this Settlement Agreement, as appropriate, in order to obtain the entry of the Final Approval Order. Notwithstanding the foregoing, any amendment to the Settlement Agreement shall not include any amendment to the releases and other provisions set forth in Sections 1.16, 1.17, 1.34, 1.35 and 3 of this Settlement Agreement unless both Parties agree in writing.

9.4     In the event that the Court declines to grant final approval of the Settlement, and the Settlement Agreement is not modified in accordance with section 9.1 hereof, Defendants agree that this Settlement Agreement is not terminated so long as Named Plaintiffs timely appeal/petition the appeals court for review and/or seek reconsideration in the district court.  Defendants agree not to oppose any motion for reconsideration or appeal/Supreme Court petition by Named Plaintiffs of the Court's or any appellate court's decision(s) or, any petition to have the Settlement finally approved.  The Settlement will remain effective during the pendency of any such appeal or petition or motion for reconsideration.  If the Court enters the Final Approval Order, but approves an award of attorneys' fees and costs in an amount less than one third $(33\ ^1/_3\%)$ of the Settlement Fund, this Settlement

Agreement shall remain in full force and effect, and Class Counsel shall accept such lesser award of attorneys' fees and costs subject only to their right to appeal any such award by the Court and with the express understanding that the Net Settlement Amount available for distribution to participating Class Members cannot be determined pursuant to the Parties' plan of allocation until such appeal has been resolved.

## 10. ATTORNEYS' FEES AND EXPENSES

10.1    <u>Motion for Attorneys' Fees and Expenses:</u>  Class Counsel may move the Court for an award of attorneys' fees and for reimbursement of litigation expenses incurred in prosecuting the Action to be paid from the Settlement Fund, including fees incurred in securing all necessary court orders and approvals with respect to the Final approval of the Settlement. Such fee motion shall be filed no later than thirty-one (31) calendar days prior to the date of the Final Approval Hearing. Defendants will not take any position on any fee motion submitted by Class Counsel, provided that Class Counsel does not move for an award of attorneys' fees in excess of one third (33 $^1/_3$%) of the Settlement Fund, and Defendants will not take any position on any motion for reimbursement of litigation expenses reasonably incurred in prosecuting the Action.  Defendants will not take any position on any appeal or petition by Plaintiffs if the Court does not approve Class Counsel's request for an award of attorneys' fees and litigation expenses requested in conformity with this Section 10.1.

10.1.1    <u>Disbursement of Attorneys' Fees and Expenses:</u>  Class Counsel may direct payment of any Court-approved award of fees and expenses from the Settlement Fund no earlier than five (5) days after entry of the Final Approval Order and Judgment by the Court and (if separate) an order approving Class Counsel's petition for fees and expenses.  In the event that, before the Effective Date, the Settlement is set aside or the award of attorneys' fees and expenses is set aside or modified, Class Counsel shall promptly redeposit into the Settlement Fund all attorneys' fees and expenses paid out that have been set aside or modified, plus interest accrued on such fees and expenses for the period from payment from the Settlement Fund to Class Counsel at a rate equal to the rate of interest earned by the Settlement Fund during the same period.

10.2    <u>Motion for Named Plaintiffs' Case Contribution Awards:</u>  Class Counsel may move the Court for a Case Contribution Award, which shall not exceed $10,000.00 per Named Plaintiff, payable to the Named Plaintiffs from the Settlement Fund. Defendants will not take any position on any motion for a Case Contribution Award if made in conformity with this Section 10.2.  If Plaintiffs appeal the Court's decision not to approve Plaintiffs' request for a Case Contribution Award requested in conformity with this Section 10.2, Defendants will not take any position on such appeal or petition.

10.3  <u>Disbursement of Named Plaintiffs' Case Contribution Award:</u>  On the Effective Date, Class Counsel may instruct the Financial Institution in writing to disburse payment to the Named Plaintiffs in the amount awarded by the Court (or as modified, as necessary, following any appeal) as a Case Contribution Award from the Settlement Fund.

10.4  <u>Post-Award Expenses:</u> Class Counsel may make a supplemental motion to the Court for an award of reasonable expenses with respect to post-Settlement proceedings and administration, and any such award shall be payable only from the Settlement Fund and not by any Defendant.

## 11.  <u>MISCELLANEOUS PROVISIONS</u>

11.1  <u>Advice of Counsel:</u>  In entering into this Settlement Agreement, each Party represents and warrants that it has relied upon the advice of its attorneys, that it has completely read the terms of this Settlement, and that the terms of this Settlement have been explained to it by its attorneys.  Each Party further represents and warrants that it fully understands and voluntarily accepts the terms of the Settlement.

11.2  <u>Authority:</u>  Each Person executing this Settlement Agreement represents and warrants that he or she has the full authority to do so.  Each Party further represents and warrants that it has not assigned or transferred to any person any Claim released in this Settlement Agreement, in whole or in part.

11.3  <u>Governing Law:</u>  This Settlement Agreement shall be governed by the laws of the United States of America, to the extent applicable, and otherwise in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Ohio related to contracts made and to be performed in Ohio.

11.4  <u>Severability:</u>  In the event that any court with original or appellate jurisdiction over this Action issues a Final determination that any portion of Section 3 of this Settlement Agreement is not enforceable, the Parties may (but shall not be required to) jointly agree in writing to modify Section 3 to conform with such determination.  With the sole exception stated in the preceding sentence, the provisions of this Settlement Agreement are not severable.

11.5  <u>Amendment:</u>  Before entry of the Final Approval Order and Judgment, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties with notice to be given to the Court of the agreed modification or amendment.  Following entry of the Final Approval Order and Judgment, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties, and approved by the Court.

11.6  <u>Waiver:</u>  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any of the Parties of any breach of this Settlement Agreement shall not be deemed to be or

20

construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.7     Construction:   None of the Parties shall be considered to be the drafter of this Settlement Agreement or any provision for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.   Rather, for the purposes of construing or interpreting this Settlement Agreement, the Parties agree that the Settlement Agreement is to be deemed to have been drafted equally by all Parties and shall not be construed for or against any of the Parties.

11.8     Principles of Interpretation:   The following principles of interpretation apply to this Settlement Agreement.

    11.8.1     Headings:   The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

    11.8.2     Singular and Plural:   Definitions apply to the singular and plural forms of each defined term.

    11.8.3     Gender:   Definitions apply to the masculine, feminine, and neuter genders of each defined term.

    11.8.4     References to a Person:   References to a Person are also to the Person's Successors-in-Interest.

    11.8.5     Terms of Inclusion:   Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "but not limited to."

11.9     Dispute Resolution:   Disputes over the construction or interpretation of the Settlement shall be decided by the Court, unless otherwise agreed by the Parties.

11.10     Further Assurances:   Each of the Parties agrees, without further consideration and as part of effectuating the Settlement, that they will in good faith execute and deliver such other documents and take such other actions as may be reasonably necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

11.11     Notices:   Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice or Publication Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid) or delivered by reputable express overnight courier, with a copy by email.

IF TO NAMED PLAINTIFFS OR THE SETTLEMENT CLASS:

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Edward W. Ciolko
Mark K. Gyandoh
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY  10016
Telephone:  (212) 983-1300

IF TO DEFENDANTS:

**KEATING MUETHING & KLEKAMP PLL**
James E. Burke
One East 4th Street
Suite 1400
Cincinnati, OH  45202
Telephone:  (513) 579-6400

11.12  Entire Agreement:  This Settlement Agreement contains the entire agreement among the Parties related to this Settlement.  This Settlement Agreement supersedes any settlement terms or settlement agreements related to the Parties that were previously agreed upon orally or in writing by any of the Parties.

11.13  Counterparts:  This Settlement Agreement, and any amendments thereto, and waivers of conditions, may be executed by exchange of executed signature pages by facsimile or Portable Document Format ("PDF") as an electronic mail attachment, and any signature transmitted by facsimile or PDF via electronic mail for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, taken together, shall constitute one and the same instrument.

11.14  Binding Effect:  This Settlement Agreement binds and inures to the benefit of the Parties, their assigns, affiliates, heirs, administrators, executors, and Successors.

11.15  Agreement Execution Date:  The date on which the final signature is affixed below shall be the Agreement Execution Date.

11.16  No Benefits to Non-Parties:  Except as otherwise expressly stated herein, this Settlement Agreement is not intended to confer any benefits upon any non-Party.

22

11.17 <u>Deadlines Falling on Weekends or Holidays</u>:  To the extent that any deadline in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

**FOR NAMED PLAINTIFFS AND ON BEHALF OF THE SETTLEMENT CLASS:**

Dated: ___1/5/16___

By: _____
**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Edward W. Ciolko
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706


Dated: _____

By: _____
**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
5th Floor
New York, NY 10016
Telephone: (212) 938-1300

*Class Counsel for Named Plaintiffs
and the Settlement Class*

**FOR DEFENDANTS:**

Dated: _____

By: _____
**KEATING MUETHING & KLEKAMP
PLL**
James E. Burke
Danielle M. D'Addesa
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400

11.17 <u>Deadlines Falling on Weekends or Holidays</u>: To the extent that any deadline in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

**FOR NAMED PLAINTIFFS AND ON BEHALF OF THE SETTLEMENT CLASS:**

Dated: _____

By: _____
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Edward W. Ciolko
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

Dated: _____1/15/16_____

By: *Thomas J. M<sup>c</sup>Kenna*
**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
5th Floor
New York, NY 10016
Telephone: (212) 938-1300

*Class Counsel for Named Plaintiffs*
*and the Settlement Class*

**FOR DEFENDANTS:**

Dated: _____

By: _____
**KEATING MUETHING & KLEKAMP**
**PLL**
James E.Burke
Danielle M. D'Addesa
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400

23

11.17 <u>Deadlines Falling on Weekends or Holidays</u>: To the extent that any deadline in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

**FOR NAMED PLAINTIFFS AND ON BEHALF OF THE SETTLEMENT CLASS:**

Dated: _____      By: _____
                                      **KESSLER TOPAZ
                                      MELTZER & CHECK, LLP**
                                      Edward W. Ciolko
                                      Mark K. Gyandoh
                                      Julie Siebert-Johnson
                                      280 King of Prussia Road
                                      Radnor, PA 19087
                                      Telephone: (610) 667-7706


Dated: _____      By: _____
                                      **GAINEY McKENNA & EGLESTON**
                                      Thomas J. McKenna
                                      Gregory M. Egleston
                                      440 Park Avenue South
                                      5th Floor
                                      New York, NY 10016
                                      Telephone: (212) 938-1300

                                      *Class Counsel for Named Plaintiffs
                                      and the Settlement Class*

**FOR DEFENDANTS:**

Dated: _1/15/16_____      By: _____
                                      **KEATING MUETHING & KLEKAMP
                                      PLL**
                                      James E.Burke
                                      Danielle M. D'Addesa
                                      One East Fourth Street, Suite 1400
                                      Cincinnati, OH 45202
                                      Telephone: (513) 579-6400

23

**EXHIBITS**

Exhibit 1:     *Preliminary Approval Order*
                  Exhibit A to *Preliminary Approval Order:  Class Notice*
                  Exhibit B to *Preliminary Approval Order:  Publication Notice*

Exhibit 2:     *Final Approval Order and Judgment*

Exhibit 3:     *Plan of Allocation*